STATE OF CONNECTICUT *v.* DAVID GOGGIN, CONSERVATOR (ESTATE OF PATRICK GOGGIN), ET AL.
(13379)

HEALEY, SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued June 8—decision released August 16, 1988

*Lorrie D. Lewis,* assistant attorney general, with whom, on the brief, was *Joseph I. Lieberman,* attorney general, for the appellant (state).

*Daniel A. Silver,* for the appellees (defendant June Aleksiewicz et al.).

ARTHUR H. HEALEY, J. This action was instituted by the state of Connecticut acting through the commissioner of the department of income maintenance (DIM) under General Statutes §§ 17-83*l*[1] and 17-83m[2] against

---

[1] General Statutes § 17-83*l* provides: "FRAUDULENT CONVEYANCE FOR PURPOSE OF OBTAINING ASSISTANCE. CIVIL ACTION BY COMMISSIONER. It shall constitute a fraudulent conveyance as against the state for any person to assign, transfer or otherwise dispose of property for less than fair market value, for the purpose of qualifying for assistance under this chapter, to a transferee either having knowledge of such purpose, or having knowledge that such conveyance leaves the transferor without sufficient means to support himself on a reasonable standard of health and decency. The commissioner of income maintenance, may institute a civil action (1) to set aside any such conveyance, and to recover from the proceeds of such property the cost of any assistance provided to the transferor, or (2) to recover from the proceeds of such conveyance the cost of any assistance provided to the transferor. The commissioner may require that any remaining proceeds be applied to such transferor's future support. The commissioner's total recovery under this section shall not exceed the amount by which the fair market value of such property exceeds the consideration exchanged therefor by the transferee. Such civil action shall be brought in the superior court for the judicial district of Hartford-New Britain or in any other venue otherwise appropriate. In any such action brought to set aside a conveyance or to recover the proceeds of a conveyance, made within twenty-four months before the date of such application for assistance directly or indirectly to a transferee who is a parent, grandparent, descendant or spouse of the transferor, the transferee shall bear the burden of proving that the conveyance was not fraudulent."

[2] General Statutes § 17-83m provides: "STATE'S RIGHT OF SUBROGATION TO RIGHT OF APPLICANT OR RECIPIENT OF ASSISTANCE RE TRANSFER OF PROPERTY. CIVIL ACTION BY COMMISSIONER. In the event that any person

several defendants[3] seeking recovery for state assistance furnished under its Medicaid program to Patrick Goggin (Goggin), an incapable person. After the pleadings were closed, two defendants, June Aleksiewicz and Janet Braiewa (defendants) filed a motion for summary judgment which was granted. The state has appealed from that judgment. We find error.

The relevant background circumstances are the following. On February 7, 1984, and prior thereto, Goggin, who was in poor health and at an advanced age, was a patient in a convalescent home. At that time, he owned a life estate in certain premises in West Hartford. This house needed extensive repairs in order to make it rentable and, as the owner of the life estate, he would be responsible for making any repairs. Goggin's condition was such that he "would probably never" return to live in that house. The defendants Aleksiewicz and Braiewa and Anne Page were the remaindermen of these premises.

On February 7, 1984, a hearing was held in the West Hartford Probate Court on the application of the conservators David T. Goggin and Edythe M. Goggin for an order terminating Patrick Goggin's life estate in the West Hartford premises. After taking evidence, the Probate Court found that it was in Goggin's best interest to terminate his life estate and entered an order

applying for or receiving assistance under this chapter has any right to rescind, revoke, avoid or otherwise set aside any assignment, transfer or other disposition of property, the state shall be subrogated to such right. The commissioner of income maintenance, may bring such civil actions and pursue such other remedies as would have been available to such recipient to enforce such right, for the purposes described in section 17-83l, whether or not such disposition constituted a fraudulent conveyance within the meaning of section 17-83l."

[3] The original defendants were David T. Goggin and Edythe M. Goggin, conservators of the estate of Patrick Goggin, an incapable person, June Aleksiewicz, Janet Braiewa and Anne Page. The action was later withdrawn as to the conservators.

conveying that interest to the three remaindermen. The probate judge, in an affidavit filed with the defendants' motion for summary judgment, stated that "the consideration to be paid to Mr. Goggin for the release of the life interest was all of the outstanding bills owed by [him] for maintenance of the dwelling."

On May 14, 1984, Goggin's life interest in the real estate was conveyed to the three remaindermen for the sum of $433.32. On June 15, 1984, the remaindermen, by warranty deed, conveyed the fee to the West Hartford premises to Albert J. Larose and Thomas J. Larose. By an application dated December 11, 1984, Goggin applied for public assistance from the state under its Medicaid program. That application was granted effective December 2, 1984.

In March, 1986, the state instituted an action in two counts against the several defendants to recover money expended to that time for Goggin's care. Both counts were against the three remaindermen who were the transferees of Goggin's life interest. The first count was based on General Statutes § 17-83*l*, maintaining that there had been a fraudulent conveyance against the state. It alleged, inter alia, that Goggin was in poor health, had limited assets and income and that his life interest was conveyed for the sum of $433.32. It also alleged that this conveyance "was made either without consideration or for less than fair market value and for the purpose of qualifying for assistance to a transferee having knowledge that such transfer [left] the transferor without sufficient means to support himself . . . ." It went on to allege that to date the state had expended "at least $10,000" for Goggin's care and that assistance was ongoing.

The second count was based on General Statutes § 17-83m that provides for the state's right of subrogation to the right of an applicant or recipient of assist-

ance concerning a transfer of property. It incorporated the allegations of the first count and asserted the state's right "to pursue rescission, revocation, avoidance or otherwise setting aside the transfer" of the life interest by virtue of its furnishing public assistance to Goggin. The state claimed money damages in addition to other relief.

By way of special defense, the defendants Aleksiewicz and Braiewa invoked the February 7, 1984 Probate Court decree obtained by the conservators terminating the life estate and approving the conveyance to the three remaindermen. In that pleading, these two defendants allege that "as a result of [the probate] court order, [they] received title to [the] property free and clear of any interest that the State alleges to have."

Thereafter, the defendants Aleksiewicz and Braiewa filed their motion for summary judgment maintaining that there was no genuine issue as to any material fact. To that motion they attached an affidavit[4] of the West Hartford probate judge that set out the circumstances surrounding the probate order terminating and con-

---

[4] The affidavit of the probate judge was the following:

"I, JOHN A. BERMAN, being duly sworn, depose and say:

"1. I am Probate Judge for the District of West Hartford, Connecticut.

"2. I am making this affidavit at the request of Attorney Daniel A. Silver, counsel for June Aleksiewicz and Janet Braiewa.

"3. On February 7, 1984 a Hearing was held in the West Hartford Probate Court on an application by Mr. Patrick F. Goggin's conservators to terminate Mr. Goggin's life interest for the premises known as 45 Newington Road, West Hartford, Connecticut.

"4. As a result of evidence taken at that Hearing I found that it was in the best interest of Mr. Goggin to terminate the aforementioned life interest and convey his interest to the remaindermen, namely, June Aleksiewicz, Janet Braiewa and Annie Page a/k/a Ann Page. The consideration to be paid to Mr. Goggin for the release of the life interest was all of the outstanding bills owed by Mr. Goggin for maintenance of the dwelling.

"5. Mr. Goggin's conservators indicated at the Hearing the following:

"A. Mr. Goggin was a patient in a convalescent home.

"B. The house needed extensive repairs in order to make it rentable and that Mr. Goggin would be responsible for making all repairs.

veying the life estate. The state filed its objection to the motion to which it attached certain documents.[5] See Practice Book §§ 379 through 381. Among these was a counteraffidavit executed by the chief of resources of the DIM. It averred, inter alia, that the conservators had conveyed Goggin's life use in the property involved to the three remaindermen "for the sum of $451.23" and that, according to "the Department of Income Maintenance Policy Manual Volume I, Chapter III regulations 314–314.1 the value of Mr. Goggin's life estate was assessed at $8,263.35." It also maintained that "to date [July 30, 1987,] the state had expended at least $18,000 . . . for his care and treatment," that the assistance was ongoing and that the action in this case was one "for reimbursement by the State . . . pursuant to Sections 17-83*l* and 17-83m for the disposition of property for less than fair market value."

The trial court acknowledged that the action was brought to recover for the "alleged fraudulent conveyance of a life estate" with the first count alleging the conveyance "for no value for the purpose of obtaining public assistance" and that the second count was based on subrogation under § 17-83m. It noted that there was

"C. That Mr. Goggin would probably never return to live in the premises.

"D. The transfer of Mr. Goggin's life interest was in the best interest of Mr. Goggin.

/s/   John A. Berman
John A. Berman"

[5] There was also included a certified copy of the inventory, dated March 12, 1984, in the estate of Patrick Goggin as an incapable, setting out among the assets: "Life use of premises located at 45 Newington Road, West Hartford, Connecticut," which was inventoried at "No value."

In addition, there was a certified copy of a warranty deed of the Newington Road premises, dated June 15, 1984, whereby June Aleksiewicz, June Braiewa and Anne Page conveyed the premises to Albert J. Larose and Thomas J. Larose. The deed notes that the conveyance tax received was $74.25. See General Statutes § 12-494. These subsequent transferees are not parties to this action.

"no dispute" over the Probate Court order of February 7, 1984, that the applications for state assistance were made and approved in December, 1984, and that there was no indication that any appeal had ever been taken from the action of the Probate Court.

On appeal, the state claims that the trial court erred in: (1) concluding that the order of the Probate Court, which was not appealed, precluded the state from seeking recovery, under §§ 17-83*l* and 17-83m, of state assistance it provided Goggin; and (2) granting summary judgment where there was a genuine issue of material fact concerning the fair market value of the life interest transferred in this fraudulent conveyance action.

I

We first address the state's claim that the trial court erred in concluding that the unappealed Probate Court order of February 7, 1984, precluded the state from pursuing this action under §§ 17-83*l* and 17-83m. The trial court did err in this conclusion.

The general rule is that judgment of an issue or claim is no bar as against one who is not a party or privy to a party to that judgment. See *Hansberry* v. *Lee,* 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940); *Lake Garda Improvement Assn.* v. *Battistoni,* 155 Conn. 287, 294–95, 231 A.2d 276 (1967); *Sigal* v. *Hartford National Bank & Trust Co.,* 119 Conn. 570, 573, 177 A. 742 (1935); *New Haven Sand Blast Co.* v. *Dreisbach,* 102 Conn. 169, 179–80, 128 A. 320 (1925); *Bethlehem* v. *Watertown,* 47 Conn. 237 (1879); see also 1 Restatement (Second), Judgments § 34;[6] 46 Am. Jur. 2d, Judg-

---

[6] The Restatement (Second) of Judgments, § 34, entitled "Parties and Persons represented by parties," provides: "(1) A person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action.

"(2) A party is bound by and entitled to the benefits of the rules of res

ments §§ 518, 519. The basic principle of § 34 of the Restatement, i.e., "that, generally speaking, only persons who are parties are concluded by an action, is of constitutional dimension." 2 Restatement (Second), Judgments § 34, comment (a), citing, inter alia, *Blonder-Tongue Laboratories, Inc.* v. *University of Illinois Foundation,* 402 U.S. 313, 329, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), on remand, 334 F. Sup. 47 (N.D. Ill. 1971), aff'd, 465 F.2d 380 (7th Cir. 1972), cert. denied, 409 U.S. 1061, 93 S. Ct. 559, 34 L. Ed. 2d 513 (1972); see *Harmon* v. *San Diego County,* 477 F. Sup. 1084, 1091 (S.D. Cal. 1979). This rule is well established as a matter of common law. See *Commissioner* v. *Bosch,* 387 U.S. 456, 87 S. Ct. 1776, 18 L. Ed. 2d 886 (1967), on remand, 382 F.2d 295 (2d Cir. 1967); *Magavern* v. *United States,* 550 F.2d 797 (2d Cir. 1977) (government not bound by action to which it was not a party); 1 Restatement (Second), Judgments § 34, comment a.

Our decision in *Cook* v. *Morris,* 66 Conn. 137, 33 A. 594 (1895), is instructive on the issues in this case. In *Cook,* the plaintiff conservator brought an action against the defendant town of Morris to recover for support furnished to his ward alleging that the ward was a pauper. The plaintiff, to establish his ward's indigence, offered in evidence a certified copy of his account as conservator in which it appeared that the ward's estate had been expended. The account had been accepted and approved by the Probate Court and no appeal had been taken from that decree. The defendant town claimed that the acceptance and allowance

judicata with respect to determinations made while he was a party, except as stated in §§ 35 to 38.

"(3) A person who is not a party to an action is not bound by or entitled to the benefits of the rules of res judicata, except as stated in §§ 30–32 and in this Chapter."

Although the basic principle of § 34 is subject to certain exceptions as set out in the Restatement, none are apposite in this case.

of the account had been procured for "an improper and fraudulent purpose" and was "all part of a fraudulent scheme [by the plaintiff conservator]" to prevent his ward from obtaining the benefit of assets in fact belonging to her. In answer to this claim, the plaintiff contended that the probate decree was conclusive. In upholding the trial court's judgment in favor of the town, we pointed out that "[a] judgment can never be invoked to sustain fraud . . ." and that "[a] probate record may always be impeached for fraud." Id., 140.

In *Cook,* we also held that the entire matter of the ward's alleged ownership of property was subject to challenge by the town notwithstanding the probate decree accepting the conservator's account. In doing so, we said: "The town of Morris was not a party to the proceedings in the Court of Probate. At that time, the town had no interest in the matter so that it could [not] have been made a party to the proceedings in the Court of Probate, [nor] could [it] have appealed from the decree even if it had wished to do so. A judgment never binds those who are not parties or privies." Id., 140–41.

The state was not a party to the proceedings in the Probate Court when the Probate Court decree of February 7, 1984, was entered. At that time, it had no interest in those proceedings, but its interest arose a number of months after that decree when the application for public assistance was filed in December, 1984. Not only did the state not have any notice of the probate proceeding, but it would not have been able to intervene even if it had had notice. Moreover, it was not privy to any party to the February 7, 1984 proceedings so as to be bound on that account by that decree. See generally 1 W. Locke & P. Kohn, Connecticut Probate Practice § 116.

It also is correct that this Probate Court decree was appealable under the statutes and that it was not

appealed. The right to appeal from a decree of the Probate Court is purely statutory and the rights fixed by statute for taking and prosecuting the appeal must be met. General Statutes §§ 45-288, 45-289; *Bergin* v. *Bergin*, 3 Conn. App. 566, 568, 490 A.2d 543, cert. denied, 196 Conn. 806, 404 A.2d 903 (1985). To appeal from a decree in probate, one must be "aggrieved." General Statutes § 45-288. Obviously, the state was not aggrieved by the probate decree of February 7, 1984. The trial court, therefore, erred in concluding that the unappealed probate decree operated as a bar to the state's cause of action in this case.[7]

## II

The state also claims that the trial court erred in granting summary judgment because there existed a genuine issue of material fact, i.e., that Goggin's life estate in the West Hartford premises was transferred for less than fair market value. We agree.

"The party moving for summary judgment ' "has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law." ' *D.H.R. Construction Co.* v. *Don-*

---

[7] The claim is made by the defendants that in the event we hold that the state is not barred by the unappealed probate decree of February 7, 1984, the time-honored finality of unappealed probate decrees is gravely drawn into question and that all conveyances made pursuant to probate court decrees are in jeopardy. This is wholly without merit.

The issue in this case does not concern the title to real property conveyed pursuant to probate decrees. Rather, it concerns whether the defendants, transferees of an interest in real property, had knowledge of the nature of that transfer, which, in legal contemplation, constituted participating in a fraudulent conveyance. In the event the knowledge specified by General Statutes § 17-83*l* is found on the part of these defendants, then the state has the right to recover money damages or have the transfer set aside. Moreover, in oral argument, the state represented that it was primarily interested in obtaining money damages and not the setting aside of the transfer of the real estate, which now has been transferred to others who are not parties to this suit.

*nelly,* 180 Conn. 430, 434, 429 A.2d 908 (1980). Because the burden of proof is on the moving party, the facts presented must be viewed in the light most favorable to the party opposing the motion. *Evans Products Co.* v. *Clinton Building Supply, Inc.,* 174 Conn. 512, 516, 391 A.2d 157 (1978)." *Mingachos* v. *CBS, Inc.,* 196 Conn. 91, 111, 491 A.2d 368 (1985). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. *D.H.R. Construction Co.* v. *Donnelly,* [supra]; *Yanow* v. *Teal Industries, Inc.,* 178 Conn. 262, 268, 422 A.2d 311 (1979); *Dougherty* v. *Graham,* 161 Conn. 248, 250, 287 A.2d 382 (1971). The test is whether a party would be entitled to a directed verdict on the same facts. *United Oil Co.* v. *Urban Redevelopment Commission,* [158 Conn. 364, 380, 260 A.2d 596 (1969)]." *Batick* v. *Seymour,* 186 Conn. 632, 647, 443 A.2d 471 (1982). "Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. *Bartha* v. *Waterbury House Wrecking Co.,* [190 Conn. 8, 11–12, 459 A.2d 115 (1983)]; *Farrell* v. *Farrell,* 182 Conn. 34, 38, 438 A.2d 415 (1980); *Rusco Industries, Inc.* v. *Hartford Housing Authority,* 168 Conn. 1, 5, 357 A.2d 484 (1975). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. 'Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380.' *Bartha* v. *Waterbury House Wrecking Co.,* supra, 12." *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984). To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts in accordance with Practice Book §§ 380

and 381, which contradict those stated in the movant's affidavits and documents. *Farrell* v. *Farrell*, supra, 39–40.

General Statutes § 17-83*l* provides in part: "It shall constitute a fraudulent conveyance as against the state for any person to . . . transfer . . . property *for less than fair market value*, for the purpose of qualifying for assistance [under chapter 302 of the General Statutes], to a transferee either having knowledge of such purpose, or having knowledge that such conveyance leaves the transferor without sufficient means to support himself on a reasonable standard of health and decency." (Emphasis added.) It also authorizes the commissioner of income maintenance to institute a civil action either to set aside any such conveyance and to recover from the proceeds of such property the cost of any assistance provided the transferor or to recover from the proceeds of any such conveyance the cost of any assistance provided to the transferor. The commissioner's total recovery under this statute "shall not exceed the amount by which the *fair market value* of such property exceeds the consideration exchanged [for it] by the transferee."[8] (Emphasis added.)

There can be no question that the predicate of the state's cause of action was grounded on a fraudulent conveyance; the trial court so stated in its memorandum of decision as did the state's trial court brief on

---

[8] General Statutes § 17-83*l* also provides in part: "In any such action brought to set aside a conveyance or to recover the proceeds of a conveyance, made within twenty-four months before the date of such application for assistance directly or indirectly to a transferee who is a parent, grandparent, descendant or spouse of the transferor, the transferee shall bear the burden of proving that the conveyance was not fraudulent."

The state argues that the defendants have the burden of proving, under the statute, that the conveyance was not fraudulent. We need not reach that argument because it is clear that there is a genuine issue of material fact to be resolved, i.e., the fair market value of the life interest conveyed from Goggin to the transferees.

the summary judgment motion that set out that the action was brought pursuant to §§ 17-83*l* and 17-83m. The only document that the defendants filed at that time was the affidavit of the judge of probate who entered the February 7, 1984 decree. That affidavit indicated that on the evidence taken at the hearing, he found that it was "in the best interest of [Patrick] Goggin," given the condition of his health, to terminate his life interest and have it conveyed to the three remaindermen, the consideration for which was the payment of all the outstanding bills owed by Goggin for the maintenance of this property. The Probate Court decree has been issued under the authority of General Statutes §§ 45-77b and 45-238. Although this affidavit does not specify the dollar amount of the outstanding bills, the state's counteraffidavit alleges that the life estate was conveyed to the three remaindermen for the sum of $451.23. In addition, it also alleges that the value of the life estate, when conveyed, was $8263.35 according to specified DIM regulations. The affiant in the counteraffidavit is the chief of resources of DIM who avers that not only is the information he gives in his affidavit based upon knowledge acquired during the duties of his employment but also that he is the person appointed and empowered by the DIM commissioner to "prepare, enforce and collect claims for welfare reimbursement" due the state under title 17 of the General Statutes.[9] There is thus a genuine issue of material fact concerning the fair market value of the life estate under § 17-83*l*. "Fair market value" is a question of fact. *Turgeon* v. *Turgeon,* 190 Conn. 269, 275, 460 A.2d 1260 (1983); *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 236, 348 A.2d

---

[9] The counteraffidavit, dated July 30, 1987, also notes that the state had, to that time, expended at least $18,000 for the care and treatment of Goggin.

The state also submitted a certified copy of a warranty deed, dated July 14, 1984, by which the three remaindermen conveyed the entire fee title to the premises for approximately $67,000.

641 (1974). The defendants have not, as is their burden on their motion for summary judgment, demonstrated the contrary. "A 'material' fact has been defined adequately and simply as a fact which will make a difference in the result of the case." *United Oil Co.* v. *Urban Redevelopment Commission,* supra, 379; see *Barrett* v. *Southern Connecticut Gas Co.,* 172 Conn. 362, 378, 374 A.2d 1051 (1977).

Moreover, in speaking of fraudulent conveyances, we have said: " 'A fraudulent conveyance . . . is one made without substantial consideration and which renders the [transferor] unable to meet his obligation or one made with a fraudulent intent in which the [transferee] participated.' " *Zapolsky* v. *Sacks,* 191 Conn. 194, 200, 464 A.2d 30 (1983), quoting *Denison Development Co.* v. *Gunther,* 189 Conn. 333, 335, 455 A.2d 1340 (1983), and citing General Statutes § 52-552.[10] General Statutes § 17-83*l* has, as an element of the fraudulent conveyance that it sets up, not only the "less than fair market value" component but also the knowledge, actual or constructive, of the proscribed purpose of such conveyances under this statute. " 'The determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances' . . . [and] [s]uch a fact is . . . not ordinarily proven by direct evidence, but rather, by inference from other facts proven . . . ." *Zapolsky* v. *Sacks,* supra. "It is . . . well recognized that summary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." *United Oil Co.* v.

---

[10] General Statutes § 52-552 provides: "All fraudulent conveyances, suits, judgments, executions or contracts, made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only, their heirs, executors, administrators or assigns, to whom such debt or duty belongs."

*Urban Redevelopment Commission,* supra, 376; *Nolan* v. *Borkowski,* 206 Conn. 495, 504–505, 538 A.2d 1031 (1988). We have pointed out that this is particularly applicable in the case of fraudulent conveyances. See, e.g., *Batick* v. *Seymour,* supra, 646–47 (summary judgment erroneously granted in deed of real property); *Town Bank & Trust Co.* v. *Benson,* 176 Conn. 304, 309, 407 A.2d 971 (1978).

There is error, the judgment is set aside and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.