[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant, in its memorandum of law in support of its motion for summary judgment argues that (1) there was no statutory breach of the covenant of warranty because there was no actual or constructive eviction of the plaintiff, (2) there can be no claim of fraud or emotional distress as the contract described by the plaintiff is unenforceable, (3) the plaintiff had notice of the possible interest of Julius C. Pagano in the lots of the Oakcrest subdivision, and (4) there can be no claim of fraud as there were no misrepresentations of material fact and no reliance by the plaintiff to their detriment.
A question of fact remains regarding how much knowledge and/or notice the plaintiff received regarding a contract executed between the defendant and Julius Pagano. The defendant obtained the Oakcrest subdivision via foreclosure against a corporation known as Oakcrest, Inc. The plaintiff's brother was a director of Oakcrest. Plaintiff's father and plaintiff's original attorney attended board meetings of Oakcrest. CT Page 3002
Previous to the Lot 8 conveyance to plaintiff, the defendant entered into a contract with Julius Pagano. The corporation was to include a transfer of a lot within the subdivision, but the lot was separate and distinct from the lot to be transferred to the plaintiffs. Pagano would later file a mechanics lien on Lot #8, which the court would later remove.
Plaintiff's affidavit (January 13, 1993, file #115.50, para. 3) states that he never associated with the now defunct Oakcrest, Inc. nor new absolutely nothing about the existence of Oakcrest.
Conversely, the defendant, in his memorandum of law in support of his motion, states that plaintiff's father and brother discussed the development or the subdivision. The memo further states that plaintiff's brother and plaintiff's initial attorney knew of the contract executed between the defendant and Julius Pagano.
Since one affidavit avers absolutely no knowledge whatsoever of a corporation known as Oakcrest or any knowledge of a contract executed by the defendant and defendant's memorandum of law imputes knowledge to the plaintiff of the contract arrangement by virtue of the plaintiff's familial relationship, a question of fact exists as to what the plaintiff knew, and when he knew it.
A question or material fact also remains regarding the actual lot which is the focal point of not only this lawsuit, but of the executory contract between the defendant and Pagano.
Plaintiff's complaint (second count, para. 2) alleges that the defendant had knowledge of a prior promise to convey Lot #8 to Julius Pagano as part of the consideration paid for services rendered by Pagano. The actual contract between defendant and Pagano (attached to defendant's motion, exhibit C, para. 5) states "The balance or 59,000 will be paid . . . upon completion of the . . . items by the of a warranty deed for lot #8 to Julius Pagano." Yet, the defendant in its memorandum of law in support of its motion for summary judgment, states "compensation was to include transfer of a lot within the subdivision, but separate and distinct from the lot to be transferred to the plaintiffs." A material question of fact remains as to whether Lot #8 or another lot was meant to serve as compensation in the executory contract between the defendant and Pagano.
Finally, a question of material fact remains regarding the CT Page 3003 actual conveyance of Lot #8 to plaintiffs.
In defendant's memorandum or law in support or its motion for summary judgment, the defendant states that "in return for facilitating the foreclosure, by defendant against Oakcrest, Inc., a lot in the subdivision was to be sold at a reduced price to the plaintiff's father. Defendant's accompanying affidavit then states that the plaintiff's father asked that Lot #8 be transferred to his son and daughter-in-law (Plaintiffs) instead of himself. Lot #8 was sold to the plaintiffs on 10/18/90."
Plaintiff's affidavit does allude to the fact that he purchased Lot #8 from the defendant. There is no averment, however, by the plaintiff of a reduced price or the manner in which Lot #8 was to be originally transferred to the plaintiff's father (the President of Oakcrest). Plaintiff's knowledge of the aborted transfer from the defendant to the plaintiff's father is material — for if established by the trier of fact that the plaintiff was aware of the circumstances which ultimately enabled him to purchase Lot 8 (namely, the father's forbearance in purchasing Lot #8 himself at a reduced price) it would belie his statement that he knew absolutely nothing of Oakcrest, Inc.
Questions of motive and intent are questions of fact. Waterbury Petroleum Products, Inc. v. Canaan Oil Fuel Co.,193 Conn. 208, 217, 477 A.2d 988 (1944). Moreover, summary judgment procedure is ill adapted to cases of a complex nature. United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 375-76,260 A.2d 596 (1969). Since the motion must be examined in the light most favorable to the party opposing the motion, State v. Goggin,208 Conn. 606, 616, 546 A.2d 250 (1988), questions of material facts do exist and the defendant's motion for summary judgment is denied.
SYLVESTER, J. CT Page 3004