[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case the plaintiffs, Capitol Idea, a sole proprietorship, and Peter Rettig, its owner, have sued the defendant, Gerald N. Sciarra, to recover damages for certain losses and injuries they claim to have suffered on June 9, 1988, when an explosion took place inside Sciarra's commercial building at 56 Arbor Street in Hartford. The plaintiffs, who were leasing commercial space inside 56 Arbor Street at the time of the explosion, complain that Sciarra is legally responsible for their injuries and losses because such injuries and losses were caused by: (1) his negligent failure to oversee and control the inherently dangerous activities of one of his other commercial tenants, S.A.L.T., Inc.; and (2) his negligent failure to properly equip his building with a sufficient number of fire extinguishers, fire retardants and fire protection equipment in the event of such an explosion. Complaint, Count I, ¶ 12(E).
The defendant has now moved this Court for summary judgment, arguing that as the lessor of the subject premises, he had no control over those premises, no notice of or responsibility to detect or eliminate the dangerous condition upon them which caused the explosion in question, and thus no legal responsibility for any losses or injuries CT Page 10752 which may have resulted from that explosion. The plaintiff counters this argument by claiming that the defendant did indeed maintain control over the subject premises, and thus that he was responsible for ensuring that they be used safely and responsibly by all of his tenants. As for that portion of the premises in which the explosion occurred, the plaintiff further argues that the defendant bore a special responsibility to keep it safe because, though his employees had frequently been informed that noxious nitric acid fumes were emanating therefrom, he failed to take reasonable steps to investigate that information, and thereby failed to detect the presence of improperly stored chemicals within them before a dangerous accumulation of gases leaking from them accidentally ignited and exploded.
In support of his Motion for Summary Judgment, the defendant has filed his own affidavit and that of S.A.L.T., Inc.'s President, Dr. Manuel Fernandez. In his own affidavit, Sciarra avers (1) that at the time of the explosion, S.A.L.T. was his tenant under an oral month-to-month lease; (2) that under the terms of that lease, he could not inspect, repair or enter S.A.L.T.'s premises for any reason other than an emergency; (3) that pursuant to the lease, neither he nor any of his agents or employees ever entered, inspected or repaired S.A.L.T.'s premises for any reason other than on emergency; (4) that at no time on or before the date of the explosion did he or any of his agents or employees direct the use of the premises based to S.A.L.T.; (5) that, although he was aware that S.A.L.T. was operating a metal processing business in and upon the leased premises, he was not aware prior to the explosion that chemicals which presented any safety risk or hazard were being stored upon the premises or that any condition existed within them which created a risk of fire or explosion; and (6) that at no time prior to the explosion did Peter Rettig or anyone else on his behalf inform him that fumes were emanating from S.A.L.T.'s leased premises, nor did he otherwise become aware of such fumes. Dr. Fernandez, in his affidavit, confirmed the nature of his lease agreement with defendant Sciarra, noting specifically that Sciarra neither directed nor controlled S.A.L.T.'s use of its leased premises. Dr. Fernandez further noted that Sciarra never agreed to inspect, repair or enter S.A.L.T.'s premises for any reason other than an emergency, nor was he ever expected to do so without CT Page 10753 permission.
In opposition to the defendant's Motion, the plaintiffs have filed both an affidavit from plaintiff Rettig and true copies of the official incident reports of the Hartford Police and Fire Departments concerning the explosion. In his affidavit, Rettig disputes Sciarra's contentions that he did not control the leased premises or have notice of the presence of improperly stored chemicals therein. On the question of control, Rettig avers that Sciarra was a "hands-on" owner who frequently visited the building and would not allow tenants to make interior renovations within their premises without first consulting with him. On the question of notice, Rettig avers that Sciarra had ample notice of the dangerous condition which caused the explosion to occur because he, Rettig, had personally informed two of Sciarra's employees including his own son, of the presence of noxious nitric acid fumes in the area of S.A.L.T.'s premises. Finally, Rettig averred that on the day of the explosion and fire,
 13. There were working fire alarms in the building. There was no emergency lighting or exit lighting. The sprinkler system at the end of the building did not function to put out the fire on June 9, 1988.
Rettig Affidavit, ¶ 13.
The Hartford Police and Fire Department incident reports make no mention of any alleged failure of the building's sprinkler system to operate on the day in question. They do, however, make it clear that what exploded on June 9, 1988 was not the nitric acid of which Rettig claims to have complained, but rather heavier-than-air fumes from leaking containers of acetone which were accidentally ignited by an electric heater on the floor of S.A.L.T.'s premises.
 I
Summary judgment is a procedure by which parties to a lawsuit can expeditiously resolve their controversy whenever one of them can establish that there is no genuine issue as to one or more material facts whose existence or CT Page 10754 non-existence will be determinative of the outcome of the lawsuit. When the pleadings, affidavits and other proofs submitted eliminate any genuine doubt that the moving party would be entitled to a directed verdict if the case proceeded to trial, Batick v. Seymour, 186 Conn. 632
(1982), the moving party is entitled to the entry of summary judgment in his favor.
"Once the moving party has presented evidence in support of [his] Motion for Summary Judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue." Bartha v. WaterburyHousing Wrecking Company, 190 Conn. 8, 12 (1983). It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Instead, to successfully oppose a motion for summary judgment, the non-moving party must present specific facts which contradict those stated in the moving party's affidavits and materials. State v. Groggin, 208 Conn. 606 (1988).
 II
To prevail on a claim of negligence in the maintenance of leased premises, the plaintiff must establish both that the defendant had control of the premises in question at the time of his alleged negligence and that he had actual or constructive notice of the particular alleged defect in the premises which is claimed to have caused the plaintiff his injuries and losses. Normally, when land is leased to a tenant, the law of property regards the lease as the equivalent of a sale of the premises for the term of the lease. See W. Page Keeton, Prosser and Keeton on the Lawof Torts, § 63 at 434 (5th ed. Consequently, once possession has been transferred, the landlord ceases to be liable either to persons injured on the land or for activities which the tenant carries on upon the land, even when they create a nuisance. Id., see Smith v. HousingAuthority, 144 Conn. 13, 16 (1956) (possession or control of premises is the legal basis for liability); see also Fleming, James, Jr., Tort Risks of Land Ownership: HowAffected by Lease or Sale, 28 Conn. Bar. J. 127 (1954) (the duty of care to make or keep premises safe generally rests upon the person who has occupancy or possession of the premises). CT Page 10755
There are, however, exceptions to the landlord's tort immunity. One such exception arises when the landlord retains control over the relevant portion of the property. See Smith v. Housing Authority, supra at 16. To have control over a place is to have the authority to manage, direct, superintend, restrict or regulate it. Kirby v.Zlotnick, 160 Conn. 341 (1971). Along with the exercise of such control goes the duty to exercise reasonable care to keep that portion of the premises reasonably safe. Smithv. Housing Authority, supra.
 III
The plaintiffs, as previously noted, argue that there is a material issue of fact as to whether the defendant exercised control over that portion of the leased premises in which the explosion occurred, and if so, whether he knew or should have known of the particular dangerous condition which produced the explosion. The Court disagrees.
The affidavits of defendant Sciarra and Dr. Fernandez clearly support the defendant's claims that he exercised no control whatsoever over the portion of his building where the explosion occurred and the plaintiffs claim to have suffered their injuries and losses. Their direct representations that Sciarra neither exercised such control nor had the power to do so under the terms of his lease agreement with S.A.L.T., Inc. are fully consistent with the prevailing view that landlords typically retain no such control and, more importantly, is in no way contradicted by plaintiff Rettig's own affidavit. The fact that Sciarra is a "hands-on" owner who permits no structural renovations within his building without his approval does not even suggest, much less tend to prove, that at the time of the explosion he exercised control over that portion of the building where the explosion occurred and the plaintiffs suffered their injuries and losses. Indeed, there is nothing at all inconsistent between taking an active interest in one's commercial property and leaving one's tenants entirely alone in the control of their leased premises as long as they make no attempt to change or rebuild those premises.
Another exception to the landlord's tort immunity may arise where the landlord (1) consented to the activity CT Page 10756 which is claimed to have caused the injury or loss in question, or knew it would be carried on, and (2) knew or had reason to know that it would unavoidably involve an unreasonable risk, or that special precautions necessary to safety would not be taken. See Restatement (Second) of Property § 18.4 (1977). In this case, however, there is no basis for finding that this exception to the rule is applicable.
Here, the most that can be said of the defendant's knowledge concerning S.A.L.T. Corporation's activities is that he was generally aware that S.A.L.T. was running a metals processing business in which it sometimes used nitric acid. Though fumes from the nitric acid frequently emanated from S.A.L.T.'s premises, and thus probably came to the attention of defendant Sciarra both by smelling them and being told about them, nothing in this information gave Sciarra reason to believe that the operation of a metals processing business or the presence of nitric acid on the premises involved an unreasonable risk of explosion and fire or that special precautions necessary to safety would not be taken. In fact, the record here presented is devoid of any information tending to show that the nitric acid had any potential to cause a fire or explosion. Instead, it clearly reveals that the true cause of the explosion was the storage of leaking acetone containers near a faulty electric heater.
Because the facts here adduced fail to show that the defendant had any "knowledge . . . of the specific defective condition which caused the injury," Kirby v.Zlotnick, supra at 344-45, he cannot be found to have had any liability for that injury.
 IV
As for the plaintiff's alternative claim, that the defendant is liable to them in negligence for failing to keep the end of the building in which the explosion and fire occurred equipped with working fire alarms and a sprinkler system adequate to put out the fire in their leased premises, the facts presented in opposition to the Motion for Summary Judgment give the Court no basis whatsoever upon which to find several important facts which the plaintiffs must prove to prevail on that claim. First, CT Page 10757 they fail to suggest that the defendant had any duty to maintain such equipment in or upon the leased premises under the terms of their lease. Absent such an agreement, the defendant, as landlord, would have no legal duty either to install such equipment in the building or to maintain it in working order.
Second, there is no evidence that any fire prevention or fire suppression equipment actually provided in or upon the leased premises remained under the control of the defendant landlord. Had the defendant maintained such control, then along with such control he would have had a duty to use reasonable care to inspect and maintain that equipment for the benefit of his tenants. Here, however, the facts adduced do not suggest that the defendant maintained any control over any fire prevention or fire suppression equipment in the part of the building where the explosion and fire occurred. Therefore, he had no corresponding duty to maintain it.
Third, there is no evidence to suggest that even if the defendant did have a duty to maintain fire suppression or fire prevention equipment on the subject premises, he had any notice that it either did not work or was inadequate for its intended purpose. There had been no complaints to Sciarra about any such equipment prior to the explosion and fire, and there is no other evidence that he knew or should have known it did not work.
Fourth, and finally, there is no evidence that the defective or deficient equipment herein complained of in any way contributed to the plaintiff's injuries or losses. No claim has been advanced or supported in any way that if the sprinkler system had worked the fire which followed the explosion would have been put out sooner.
In sum, because the plaintiffs, in their legal Memorandum and opposing Affidavits, have failed to raise any evidence at all to refute the defendant's convincing showing that he is not legally responsible for the losses and injuries they suffered on June 9, 1988, the defendant is entitled to a summary judgment.
It is ordered this 24th day of October, 1994. CT Page 10758
Michael R. Sheldon Judge