[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
In this case, plaintiff Marcel Turgeon has sued defendants Snap-On Incorporated ("Snap-On"), Bamber Enterprises, Inc. ("Bamber"), Heldmann Tool Supply, Inc. aka JJK, Inc. ("Heldmannn), Laurel Supply Corp. aka S S Enterprises II, Inc. ("Laurel Supply") and Triangle Tool Group, Inc. ("Triangle Tool") under General Statutes § 52-572met seq., the Connecticut Products Liability Act. He thereby seeks to recover money damages for certain injuries he claims to have suffered on December 14, 1986, when while working at the Pratt Whitney Aircraft Plant in East Hartford, Connecticut, a defective ratchet wrench with which he was tightening a bolt broke and came apart, causing him to fall backwards and strike his neck.
Counts One through Four of the plaintiff's Complaint are directed, respectively, to defendants Snap-On, Bamber, Heldmann and Laurel Supply. Each alleges, in the alternative, that the defendant named therein is responsible for the plaintiff's injuries because, while "engaged in the business of distributing and selling tools with the expectation that [they] would be used in the State of Connecticut by the[ir] purchasers . . .;" id., Count I, ¶ 1; Count II, ¶ 1; Count III, ¶ 1; Count IV, ¶ 1; the defendant "sold and distributed [the defective ratchet wrench] . . . to Pratt Whitney Aircraft[.]" Id., Count I, ¶ 3; Count II, ¶ 3; Count III, ¶ 3; Count IV, ¶ 3.
Count Five of the Complaint is directed to defendant Triangle Tool. In it, the plaintiff alleges that the defendant, unlike its co-defendants, "manufactured [the defective ratchet wrench] and distributed [it] to [other] CT Page 12615 distributors who thereafter sold [it] to . . . Pratt Whitney Aircraft;" id., Count V, ¶ 3; while "engaged in the distribution, manufacture and sale of hand tools with the expectation that [they] would be used in the State of Connecticut by the[ir] purchasers[.]" Id., Count V, ¶ 1.
Defendant Triangle Tool has answered the plaintiff's Complaint by admitting that at all times relevant to this case it was engaged in the distribution, manufacture and sale of hand tools with the expectation that they would be used by their purchasers in the State of Connecticut, but denying that it manufactured the ratchet wrench in question or distributed it to any other distributor who thereafter sold it to Pratt 
Whitney Aircraft. Answer and Special Defenses, p. 1. In addition, it has pleaded four special defenses, including the following claim that the plaintiff's action against it is barred by General Statutes § 52-577a, Connecticut's statute of limitations for products liability actions:
FIRST SPECIAL DEFENSE
 Despite having knowledge five years prior to filing of the instant action that Triangle Tool Group, Inc. was the manufacturer of Bonney half-inch ratchet wrenches, plaintiff's counsel elected not to pursue an action against Triangle Tool Group, Inc. or any other purported manufacturer of the subject wrench until more than eight years from the time of plaintiff's injury had passed. Accordingly, plaintiff's action as directed to Triangle Tool Group, Inc. is time barred by the applicable statute of limitations, Conn. Gen. Stat. Section 52-577a.
Answer Special Defenses, p. 2.
The plaintiff, in turn, has replied to the special defenses of defendant Triangle Tool by filing a responsive pleading entitled Amended Denial Re: Triangle Tool Group, Inc. ("A.D."). In this pleading, the plaintiff made the following plea in avoidance of the defendant's First Special Defense: CT Page 12616
 1. As to the First Special Defense, the Plaintiff denies the same and pleads in avoidance, pursuant to § 172 of the Connecticut Practice Book that this matter is properly brought within the time permitted by law pursuant to § 52-593
and § 52-593a of the Connecticut General Statutes.
A.D., p. 1.
Defendant Triangle Tool has now moved this Court under § 378 of the Connecticut Practice Book for summary judgment on Count Five of the plaintiff's Complaint. In substance, it alleges that on the undisputed facts of record, it is entitled to judgment as a matter of law because there is no genuine issue of material fact as to the validity and sufficiency of its First Special Defense. It claims, in particular, that (1) the plaintiff failed to bring this action within three years of the date on which he first sustained his injuries, as required in any products liability action by General Statutes § 52-577a; (2) the action cannot be saved by General Statutes § 52-593, Connecticut's Wrong Defendant Statute, for the plaintiff's only prior lawsuit concerning the matters here at issue was not brought against another putative manufacturer or wholesale distributor of the subject ratchet wrench, as the defendant is claimed to be, and thus cannot be found to have failed because the plaintiff named the wrong defendant therein; and (3) even if this action might have been saved under Section 52-593, it was not so saved because the plaintiff failed to serve the defendant with process within one year of the unsuccessful termination of his earlier action. The defendant has supported its motion with appropriate briefs, materials and argument.
The plaintiff has opposed the defendant's motion with his own memorandum of law, accompanying materials and oral argument. His position, as more fully described below, is that even though this action was commenced long after the three-year limitations period prescribed by law had expired, it was timely filed under Sections 52-593 and 52-593a, since: (1) he failed to obtain judgment in an earlier products liability action for failure to name the right defendant therein; and (2) within one year of the termination of said earlier action, he personally delivered process in this new CT Page 12617 action to the sheriff, who timely served the defendant therewith within fifteen days of receiving it, as permitted by Section 52-593a.
 I
"Summary Judgment is a method of resolving litigation when the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Citations omitted.) Wilson v. New Haven, 213 Conn. 277,279 (1989). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Citations omitted.)Connecticut Bank Trust Co. v. Carriage Lane Associates,219 Conn. 772, 781 (1991).
The "party seeking summary judgment has the burden of showing the nonexistence of any material fact. . . ." (Citation omitted.) Id. "The movant must show that it is quite clear what the truth is and that excludes any real doubt as to the existence of any genuine issue of material fact." (Citation omitted.) State v. Goggin, 208 Conn. 606,616 (1988). It is "incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." (Citation omitted.) WadiaEnterprises, Inc. v. Hirschfeld, 224 Conn. 240, 247 (1992). "Summary judgment may be granted where it is clear that a claim is barred by a statute of limitations." Woodside GreenCondominium Association, Inc. v. Woodside Green, Inc.,9 Conn. L. Rptr. 637 (October 4, 1993, Lewis, J.), citing Mac's CarCity, Inc. v. American National Bank, 205 Conn. 255, 259-60
(1987).
 II
The defendant's threshold argument, that the instant action was not filed within the time permitted by Section52-577a, is uncontested, and rightly so. That statute provides, in pertinent part, that
 (a) No product liability claim as defined in section 52-572m shall be brought but within three years from the date when the CT Page 12618 injury . . . is first sustained or discovered . . ..
Both parties agree, and the evidence clearly shows, that the plaintiff did not serve the defendant with process until March 6, 1995, more than eight years after the plaintiff "first sustained" his injuries, and thus more than five years after the applicable limitations period expired.
To save this action, the plaintiff must therefore prove at trial that its belated effort to sue defendant Triangle Tool is justified, as claimed in its plea in avoidance, under General Statutes § 52-593 and/or § 52-593a.
 III
General Statutes § 52-593 provides, in pertinent part, as follows:
 When a plaintiff in any civil action has failed to obtain judgment by reason of failure to name the right person as defendant therein, the plaintiff may bring a new action and the statute of limitations shall not be a bar thereto if service of process in the new action is made within one year after the termination of the original action.
So written, this statute cannot be relied upon to save every late-filed action which is brought within one year after the unsuccessful termination, for whatever reason, of a prior lawsuit. Such a reading would plainly undermine the essential purpose of the statute of limitations, which is to prevent the unjustified prosecution of stale claims, for it would enable lazy, incompetent litigants to bring a series of unfounded, ill-planned or procedurally deficient actions long after the running of the statute of limitations, justifying each new action, in turn, by the prior unsuccessful termination of its predecessor. Instead, the statute limits relief from the statute of limitations to one narrow class of plaintiffs whose prior efforts to pursue their claims are of the very sort which the statute of limitations is designed to foster: those who reasonably but mistakenly brought their current claims against other defendants in timely, prior actions which failed CT Page 12619 solely because the right defendants were not named therein.
When a plaintiff fails to bring a potentially viable claim within the limitations period prescribed by law, he can ordinarily be presumed to have abandoned the claim by his own inaction. When this occurs, it is ordinarily fair and appropriate to require the forfeiture of the belated claim, both to penalize the plaintiff, who could and should have acted more assiduously to preserve his rights, and to protect the defendants, who will otherwise be forced to defend a stale claim.
When, however, a plaintiff who files a belated claim can show that he originally filed a timely action against the wrong party, under the reasonable but mistaken belief he was the right party, and that his original action failed not for factual or technical reasons, but because of his failure to name the right party, a similar presumption of abandonment and justification for forfeiture of the claim do not arise. Unlike plaintiffs who fail to assert timely claims due to laziness, technical ineptitude, tactical choice or other avoidable causes, a plaintiff who has pursued his claim in timely fashion and in good faith, albeit against the wrong defendant, is logically entitled to the second chance which Section 52-593 affords him if he refiles his misdirected action within one year of its unsuccessful termination.
Connecticut case law has long confirmed the foregoing reading of Section 52-593. Thus, in the leading case ofWhipple v. Fardig, 109 Conn. 460 (1929), the Connecticut Supreme Court held that an otherwise untimely negligence action was saved by the predecessor of Section 52-593 when the record established that it was brought within one year of the unsuccessful termination of a prior action for failure to name the right defendant therein. The Court explained its ruling as follows:
 [The plaintiff brought the first action in the belief that the [original defendant] was liable as the principal or master of the driver of the automobile. It was established by records and the testimony of officers of the company that this was not the fact. At the trial it developed for the first time who was the CT Page 12620 real owner of the car. The following day a suit was begun against that owner and her agent, the driver of the automobile . . . The plaintiff has not been guilty of laches in pressing his claim. It is quite apparent that in the first action, the plaintiff by mistake named the wrong defendant. Under [the predecessor to Section 52-593], he was entitled within one year from the conclusion of the first action, to bring another against these defendants, without running counter to the statute of limitations.
Whipple v. Fardig, supra, 464-65.
The upshot of Whipple is simple and straightforward: when a plaintiff's original action terminates unsuccessfully because the wrong defendant was named therein, and the naming of said wrong defendant was the product of a reasonable and honest mistake as to the identity of the truly responsible party, the mistake can be excused, and the plaintiff's new action against "the right party" can be saved, if it is refiled against "the right party" within one year of the termination of the prior action. Under any other circumstances, however, Section 52-593 is inapplicable, and a late-filed action will be barred by the statute of limitations unless it is saved by a different statutory provision.
In this case the plaintiff claims, as previously noted, that his instant action is saved against defendant Triangle Tool because in December of 1989, before the expiration of the three-year limitations period prescribed by Section 52-577a, he filed an original products liability action which was ultimately terminated for failure to sue the right defendant. Though this contention is factually accurate as far as it goes, the Court concludes, for the following reasons, that the filing and unsuccessful termination of the plaintiff's original action do not save this action under General Statutes § 52-593.
The plaintiff's original action, entitled Marcel Turgeonv. Kawie Supply Co., Inc., Docket No. CV90-0371852S, was filed in the Superior Court for the Judicial District of CT Page 12621 Hartford/New Britain at Hartford in early January of 1990. A one-count action brought under General Statutes § 52-572m etseq., the Connecticut Products Liability Act, it sought to recover money damages from the named defendant on the theory that that defendant, like the first four named defendants in the instant action but unlike Triangle Tool, had "sold and distributed [the subject ratchet wrench] . . . to Pratt 
Whitney Aircraft;" Original Complaint ("O.C."), ¶ 3; while "engaged in the business of distributing and selling tools with the expectation that these products would be used in the State of Connecticut by purchasers of the same." O.C., ¶ 1.
At no point in the plaintiff's Original Complaint did he claim or suggest that in addition to selling and distributing the subject ratchet wrench to Pratt Whitney Aircraft, the defendant had manufactured the ratchet wrench or distributed it to other distributors who thereafter sold it to Pratt 
Whitney Aircraft. At no point, moreover, did the plaintiff allege or suggest that the defendant was engaged in the manufacture or wholesale distribution of any hand tools, much less the defective wrench or tools like it. Instead, he confined his allegations to those he would later make in this case against defendants Snap-On, Bamber, Heldmann and Laurel Supply: that the defendant had merely sold and distributed the wrench to Pratt Whitney Aircraft while engaged in the tool selling and distribution business.
As the original case developed, it ultimately became apparent to all involved that defendant Kawie Supply Co., Inc. had nothing whatsoever to do with the sale or distribution of the defective ratchet wrench to Pratt Whitney Aircraft. In light of this realization, defendant Kawie moved this Court for summary judgment. On March 3, 1994, when the motion came on for a hearing, the parties agreed on the record in open court that defendant Kawie was entitled to judgment as a matter of law because there was no genuine issue of material fact that Kawie had not sold or distributed the subject ratchet wrench to Pratt Whitney. On that score, the following colloquy took place:
 THE COURT: . . . it is my understanding that the materials submitted in support of the motion for summary judgment are submitted on the issue whether there is a genuine issue of CT Page 12622 material fact as to whether the defendant in this case was the vendor to Pratt of the particular wrench, in this case[,] particular ratchet, I should say, which broke; and whether there is any evidence to suggest that the particular wrench was sold by this particular distributor to this particular company, Pratt, in the relevant time frame. That's my understanding of the basis.
 MR. FLYNN: That is the crux of the issue, Your Honor.
 THE COURT; And on that crux issue is there any intent by the plaintiff to offer counterv[a]iling affidavits to suggest that . . . this particular wrench was in fact sold in the relevant time frame to this company by this distributor?
MR. FLYNN: There is not, Your Honor.
. . .
 MR. FLYNN: . . . We do not intend to offer or to have any evidence to counterv[a]il the affidavit presented on that issue by [opposing counsel] in his motion for summary judgment.
 THE COURT: Does either party wish to be heard on this matter? We've talked about it some in chambers. Is there anybody — and I've read the materials. Is there any further offer?
MR. ADLER: No, Your Honor.
MR. FLYNN: No, Your Honor.
 THE COURT: All right. On a motion for summary judgment one takes the evidence in a light most favorable to the CT Page 12623 plaintiff, certainly, where the plaintiff is the opponent [to] the motion for summary judgment[,] nominally or otherwise. The question that's before the court is whether the evidence taken in that light leaves any genuine issue of material fact as to a fact that is in controversy in the case and upon which the entry of judgment depends. One fact that is critical in this case is whether indeed, and it's the ultimate fact, Kawie was the distributor. In view of the affidavits and other materials that have been submitted in this matter it is clearly established . . . that Kawie was not the distributor. And on that basis the court enters a summary judgment for the defendant in this case.
Transcript of Hearing on Motion for Summary Judgment inTurgeon v. Kawie Supply Co., Inc., pp. 2-4.
In this colloquy, as in the Original Complaint, as amended, to which it relates, what is significant for present purposes is that the plaintiff's one and only theory of liability against Kawie is that it had sold and distributed the defective ratchet wrench to Pratt Whitney Aircraft. Just as the Original Complaint had never claimed that defendant Kawie was the manufacturer or wholesale distributor of the ratchet wrench in question, plaintiff's counsel never argued or suggested that his theory of the case in any way involved, much less depended upon, any allegation or suggestion of manufacture or wholesale distribution.
Notwithstanding these materials, the plaintiff now asserts that this case should be saved from the bar of the statute of limitations because its prior action against Kawie failed for failure to name the right defendant. It supports this claim in material part by the affidavit of plaintiff Turgeon, who states:
 1. I was the Plaintiff in the case entitled Marcel P. Turgeon vs. Kawie Supply Co., Inc., Docket No. CV90-0371852S in the Superior Court for the CT Page 12624 Judicial District of Hartford/New Britain.
 2. This suit arose out of my use of a Bonney one-half inch (1/2") ratchet wrench while I was employed at the Pratt Whitney Aircraft plant in East Hartford, Connecticut. At said time and place, I was using this wrench in order to tighten a bolt on a vertical turret lathe. Said wrench came apart and caused me to fall backwards from a machine platform and strike my neck thereby causing me a severe disc injury resulting in both permanent injury and the need for serious spinal surgery.
 3. As a result of these injuries and the claimed defective condition of said wrench a lawsuit (as above indicated) was brought to this Court upon information and belief.
 4. It was later proved that Kawie Supply Co., Inc. had vended by their own admission other types of ratchet wrenches to Pratt Whitney Aircraft but had not sold a one-half inch (1/2") Bonney ratchet wrench.
 5. Based upon the foregoing information which proved the defendant Kawie Supply Co., Inc. to be the wrong defendant in this case, a Summary Judgment was entered in this Court, on March 3, 1994 before Sheldon, J. in favor of the Defendant Kawie Supply Co., Inc.
 6. The instant suit . . . has been brought to this Court based on further investigation which has disclosed the Defendant Triangle Tool Group, Inc. to be the manufacturer of the aforesaid Bonney one-half inch (1/2") ratchet wrench and that the Defendants Snap-On Incorporated, CT Page 12625 Bamber Enterprises, Incorporated, Heldmann Tool Supply, Inc. and Laurel Supply Corp., had supplied said item to the Pratt Whitney Aircraft plant in East Hartford, Connecticut at various times prior to my accident.
Affidavit of Marcel P. Turgeon, pp. 1-2.
So drafted, the plaintiff's affidavit confirms what his Original Complaint against Kawie and his lawyer's comments on Kawie's motion for summary judgment so strongly suggest: that his original action against Kawie did not fail to result in a judgment against the manufacturer or wholesale distributor of the subject ratchet wrench because of failure to name the right defendant therein. Instead, it clearly failed to produce such a judgment because no putative manufacturer or wholesale distributor was ever sued. According to Mr. Turgeon, Kawie was sued on the theory that it had sold the subject ratchet wrench. Not once does the plaintiff suggest that he or his counsel ever suspected, much less believed and alleged, that Kawie had manufactured this or any ratchet wrench.
The plaintiff also acknowledges that the sole basis for the termination of his action against Kawie was the dawning realization that it had sold other types of ratchet wrenches to Pratt and Whitney, but not the wrench in question. Here again, there is no suggestion that the reason for terminating the earlier action was in any way tied to any mistaken belief that Kawie was the manufacturer or wholesale distributor of the subject wrench.
In fact, the plaintiff's description of how he first learned of defendant Triangle Tool's alleged status as the manufacturer and wholesale distributor of the ratchet wrench is striking for its omission of any details concerning that process of discovery. All that emerges from his vague, general statement is that at some unspecified time, by some unspecified means, he learned by "further investigation" that Triangle Tool was the product manufacturer and the other new defendants were its true sellers and distributors to Pratt 
Whitney. Significantly, there is no claim in the affidavit that he ever attempted to ascertain the identity of the manufacturer before he filed the original lawsuit, or that he ever had any information, mistaken or otherwise, on the CT Page 12626 subject.
In sum, though it can doubtless be claimed, with good reason, that the plaintiff's renewed efforts in this lawsuit to sue alleged sellers or distributors of the defective ratchet wrench to Pratt Whitney Aircraft are justified, under the Wrong Defendant Statute, it cannot rightly be argued that the plaintiff's current claim against Triangle Tool is so justified, for the plaintiff made no prior effort to sue a manufacturer or wholesale distributor of the wrench, and thus did not have his first action fail as to a manufacturer because the right defendant was not named. The Court can only speculate as to why the plaintiff failed to sue a manufacturer in its prior action. However, it need not rely on such speculation here, for the precise reasons for this failure are immaterial. Suffice it to say that because there was no pursuit of a manufacturer in the original action, the belated pursuit of one now cannot be justified by the terms of Section52-593.
 IV
Because the Court has determined that the Wrong Defendant Statute, General Statutes § 52-593, cannot save the plaintiff's action against defendant Triangle Tool, it need not reach the other issues here presented for decision.
Conclusion
For all of the foregoing reasons, the Court hereby grants the defendant's motion for summary judgment.
Michael R. Sheldon Judge