[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On February 28, 1994, the plaintiff, Willow Springs Condominium Association, filed an eighteen count second amended complaint seeking damages arising out of the construction and subsequent maintenance of a sewage treatment plant.
The complaint alleges that Seventh BRT Development Corporation (BRT), its agents, representatives and/or affiliates constructed a total of three hundred and twenty-two (322) condominium units. Of these units, approximately two hundred and sixty (260) have been sold. The plaintiff further alleges that BRT also constructed a community sewage treatment plant designed to service the condominium complex. According to the plaintiff, on or about June 6, 1992, it discovered that the treatment plant was inoperative and in substantial disrepair. The plaintiff attributed the plant's failed state to, inter alia, inadequate design, poor construction, and improper maintenance and operation.
Counts one through nine are directed against BRT in its CT Page 10996 capacity as developer of the Willow Springs Condominium complex.
The plaintiff alleges in the first count that BRT made oral and written representations, which were relied upon by unit purchasers, that the treatment plant would be efficient enough to handle the complex's waste management needs and that the plant would be adequately, maintained. Nevertheless, the plaintiff alleges that BRT not only failed to construct a treatment plant capable of handling the complex's waste management needs, but failed to provide for the appropriate service, maintenance, and operation of that facility. The plaintiff alleges a breach of express warranties in violation of General Statutes § 47-274, and that in light of this breach, the plaintiff and the unit owners will incur costs and expenses associated with the repair of the treatment plant.
Counts two through nine allege a breach of the implied warranty of quality in violation of General Statutes § 47-275, a breach of express warranties in violation of General Statutes § 47-117, a breach of implied warranties in violation of General Statutes § 47-118, fraudulent concealment, fraudulent inducement, willful and wanton misconduct, a violation of the Connecticut Unfair Trade Practices Act (CUTPA) as contained in General Statutes § 42-110a et seq., and a breach of a duty of care, respectively.
In the tenth count, the plaintiff alleges that two entities, Danbury Crossroads Corporation, formerly known as BRT Development Corporation, and Little Rock Properties Corporation, formerly known as BRT Corporation, along with BRT, operate under common ownership and control and that based upon this common ownership, are jointly and severally liable.
Counts thirteen, fourteen, fifteen, and eighteen are the counts at issue. The plaintiff alleges in counts thirteen through fifteen that Dennis McDonald, Ed Nahom, and Teresa LaCroce, respectively, all in their capacity as Executive Board members of the Willow Springs Condominium Association, breached a fiduciary duty in violation of both § 2.3 of the Willow Springs Condominium Association Bylaws and § 42-275 of the General Statutes.
In the sixteenth and seventeenth counts, the plaintiff alleges that the Condominium Management Group (CMG) is a division of Little Rock Properties Corporation and that CMG, CT Page 10997 pursuant to a contract entered into between CMG and the plaintiff, acted as Property Manager for the complex between July 12, 1985 and December 31, 1990. The plaintiff alleges that CMG breached its contract by failing to insure that the treatment plant was being properly operated and maintained, and by failing to disclose to the plaintiff or other unit owners the deficiencies with regard to the treatment plant.
In the eighteenth count, the plaintiff alleges that Consultant's Engineer's, Inc. (CE), an engineering and design corporation, was engaged at the behest of BRT to design the treatment plant for the condominium complex. The plaintiff continues and recites that in its capacity as designer of the treatment plant, CE owed a duty of care to the future users of the treatment plant "to perform its design duties with the ordinary skill and standards expected of professional engineers." Nevertheless, the plaintiff alleges that CE breached that duty of care in that CE was negligent by: (1) failing to prepare a design which would effectively support the sewage needs of the complex; (2) failing to design a defect free treatment plant; (3) failing to assign trained personnel familiar with designing community sewage facilities; and (4) failing to adequately supervise the construction of the treatment plant.
On October 8, 1993, BRT, Danbury Crossroads Corporation, Little Rock Properties Corporation, Dennis McDonald, Ed Nahom, Teresa LaCroce and CMG filed an answer. By way of four special defenses, the parties allege that: (1) the claims set forth against them are barred by the applicable statute of limitations; (2) any losses or damages sustained by the plaintiff resulted from the negligence of the plaintiff and its agents who were charged with performing operational and maintenance activities subsequent to December 31, 1990; (3) counts thirteen through fifteen do not allege a private cause of action based upon a violation of § 2.3 of the Willow Springs Condominium Association Bylaws and § 42-275 of the General Statutes, and; (4) based upon the allegations as set forth in the complaint, the plaintiff is not entitled to punitive damages or attorney's fees as to defendants Ed Nahom, Teresa LaCroce, and Dennis McDonald. On November 10, 1993, the plaintiff filed a reply wherein it denied the foregoing special defenses.
On July 22, 1993, CE also filed an answer. Byway of three special defenses, CE alleges that: (1) the claims alleged by the CT Page 10998 plaintiff in count eighteen are barred by the doctrine of economic loss in that no privity exists between the plaintiff and CE; (2) the claims set forth in count eighteen are barred by the applicable statutes of limitations, and; (3) any losses or damages sustained by the plaintiff resulted from its own negligence or from the negligence of its agents, servants, employees, or others engaged by it.
On February 1, 1994, Teresa LaCroce and Ed Nahom (hereinafter "defendants") filed a motion for summary judgment on the grounds that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. The defendants have filed a memorandum of law, with affidavits and an excerpt of a deposition, in support of their motion. The plaintiff has filed a memorandum of law and an affidavit in opposition.
On March 22, 1994, CE also filed a motion for summary judgment on the ground that the plaintiff's claims as set forth in count eighteen are barred by the operation of General Statutes § 52-584. CE filed a memorandum of law, along with an affidavit and several exhibits, in support of its motion. The plaintiff filed a memorandum in opposition to the defendants' motion. In response to the plaintiff's opposition memorandum, CE filed a reply memorandum with additional exhibits in further support of its motion.
A motion for summary judgment shall be granted "`if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994). A material fact is simply a fact which will make a difference in the result of the case. Genco v. ConnecticutLight and Power Co., 7 Conn. App. 164, 167, 508 A.2d 58 (1986). The burden of proof is on the moving party. State v. Goggin,208 Conn. 606, 616, 546 A.2d 250 (1988). The facts presented must be viewed in the light most favorable to the party opposing the motion. Id. "To satisfy his burden, the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of any material fact." Fogarty v. Rashaw, 193 Conn. 442, 445,476 A.2d 582 (1984). Issue finding, rather than issue determination, is the key to the procedure. Yanow v. Teal Industries,Inc., 178 Conn. 262, 269, 422 A.2d 311 (1979). CT Page 10999
Defendants' Motion For Summary Judgment
At the outset, it should be noted that nearly the entire supporting memorandum submitted by the defendants is based upon references to deposition testimony. Furthermore, the defendants have attached the uncertified copy of an excerpt of the deposition testimony of Sondra Cherney, plaintiff's president, in further support of its motion. Nevertheless, "uncertified copies of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book 380." Oberdick v. Allendale Mutual Insurance,9 Conn. L. Rptr. 607, 608 (September 27, 1993, Celotto, J.). Therefore, the quoted excerpts of deposition testimony as set forth in the supporting memorandum and also the deposition testimony of Sondra Cherney should not be considered by the court in evaluating this motion for summary judgment.
In their supporting memorandum, the defendants postulate that the plaintiff is attempting to impute the alleged knowledge of the treatment plant's deficiencies from Dennis McDonald to the defendants. The defendants argue that: (1) they were not responsible for the operation of the treatment plant; (2) there is no documentary evidence suggesting that they ever received negative information with regard to the treatment plant, and; (3) there is no evidence, other than the fact that they were officers, which demonstrates that the defendants participated in the commission of a tort or breach of duty.
The plaintiff counters that a genuine issue of material fact remains as to whether the defendants breached a fiduciary duty inured to them.
"A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Dunhamv. Dunham, 204 Conn. 303, 322, 528 A.2d 1123 (1987). "The position of the fiduciary or dominant party affords him great opportunity for abuse of the confidence reposed in him." Id. "Whether or not fiduciary duties are owed is a question of fact to be determined at trial." Gengras v. Coopers Lybrand,11 Conn. L. Rptr. 252, 254 (May 2, 1994, Espinosa, J.).
Attached to the defendants' memorandum is the affidavit of CT Page 11000 defendant Ed Nahom, who states, in part, that:
 From 1985 until 1992 I served as Senior Vice President of Seventh BRT.
 I was not involved with the day to day maintenance of the sewage treatment plant.
 I have never had any knowledge relating to alleged serious problems or deficiencies with the treatment plant.
 I have never willfully withheld any information with respect to serious problems with the treatment plant, since I have never been aware of any serious problems in connection therewith.
(Affidavit of Ed Nahom dated January 17, 1994, paragraphs 5, 7, 8, 9).
Also attached to the defendants' memorandum is the affidavit of defendant Teresa Lacroce [LaCroce], who states, in part, that:
 In 1986 I has [sic] employed in the financial section of BRT.
 After the construction of Willow Springs I served as the Assistant Vice-President in charge of financial services.
 I was not involved with the construction or day to day maintenance of the sewage treatment plant.
 I have never had any knowledge relating to alleged serious problems or deficiencies with the treatment plant.
 I have never willfully withheld any information with respect to serious problems with the treatment plant, since I have never been aware of any serious problems in connection therewith.
(Affidavit of Teresa Lacroce [LaCroce] dated January 20, 1994, paragraphs 5, 6, 8, 10, 11).
Attached to the plaintiff's opposition memorandum is the affidavit of Paul Marr, who states, in part, that: CT Page 11001
 . . . I was a member of the Executive Board of the Willow Springs Condominium Association.
 At various points in time after the formation of the Condominium Association in 1987, both Theresa LaCroce and Ed Nahom served as officers and/or directors of the Executive Board of the Willow Springs Condominium Association.
 That concurrent with their service on the Willow Springs Condominium Association's Executive Board both Therese [sic] LaCroce and Ed Nahom were employees of "BRT", which was the entity or entities who built and created the Willow Springs Condominiums.
 On or about June 1, 1992, I was informed, as President of the Unit Owner's Association, that the waste water treatment facility operator had abandoned the facility without notice and that the facility was in a virtually inoperative state. A subsequent investigation by the Executive Board . . . revealed that the facility had significant construction deficiencies and inadequacies. Subsequent to June 1, 1992, it was learned that several BRT representatives had in fact been aware of significant problems and/or concerns regarding the waste water treatment facility.
 The investigation of the Executive Board has revealed that a meeting was held in the summer of 1988, at which BRT representative Barry Bertrum and Dennis McDonald met with a representative of the State Department of Environmental Protection . . . to discuss problems at the treatment facility . . . Barry Bertrum is the President of "BRT" and is also the father of the defendant, Theresa LaCroce.
 Additionally, Richard Finn, the former operator of the treatment facility, had given BRT notice of significant concerns and problems at the facility by a letter, dated April 24, 1988.
(Affidavit of Paul Marr dated July 13, 1994, paragraphs 2, 4, 5, 10, 12, 13, 14).
In the present case, the plaintiff has proffered evidence which reveals that, at a bare minimum, BRT was on notice that the treatment plant was experiencing certain problems associated CT Page 11002 with its operation. A genuine issue of material fact exists as to whether the defendants, in their capacity as officers of BRT, were privy to any facts with regard to the inefficient state of the plant which forms the factual predicate for the plaintiff's claim that a breach of fiduciary duty has occurred.
Based on the foregoing, the defendants' motion for summary judgment is denied.
CE's Motion For Summary Judgment
General Statutes section 52-584a provides:
 Actions against architect or professional engineer. (a) No action or arbitration, whether in contract, in tort, or otherwise, (1) to recover damages (A) for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of an improvement to real property; (B) for injury to property, real or personal, arising out of any such deficiency; (C) for injury to the person or for wrongful death arising out of any such deficiency, or (2) for contribution or indemnity which is brought as a result of any such claim for damages shall be brought against any architect or professional engineer performing or furnishing the design, planning, supervision or observation of construction or construction of such improvement more than seven years after substantial completion of such improvement.
 (b) Notwithstanding the provisions of subsection (a) of this section, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within one year after the date on which such injury occurred, irrespective of the date of death, but in no event may such an action be brought more than eight years after the substantial completion of construction of such an improvement.
 (c) For purposes of subsections (a) and (b) of this section, an improvement to real property shall be CT Page 11003 considered substantially complete when (1) it is first used by the owner or tenant thereof or (2) it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, including any agreed changes to the contract or agreement, whichever occurs first.
 (d) The limitation prescribed by this section shall not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring action.
"Section 52-584a is a statute of repose in that it sets a fixed limit after which the tortfeasor will not be held liable and in some cases will serve to bar an action before it accrues." Zapata v. Burns, 207 Conn. 496, 508, 542 A.2d 700
(1988). "The clear mandate of General Statutes § 52-584a `was to create a seven year absolute maximum on actions against architects and engineers, based upon the finite barrier of substantial completion, regardless of the nature of the claim, while leaving any other lesser limitations in effect.'" Id, quoting R.A. Civitello Co. v. New Haven, 6 Conn. App. 212, 229,504 A.2d 542 (1986). The burden of establishing the absence of a genuine issue of material fact pursuant to § 52-584a lies with the moving party. Id., 502.
In its memorandum of law in support of its motion, CE avers that the Town of New Fairfield issued a certificate of occupancy for the treatment plant on November 6, 1985, and that the plant was available for use on that date. CE has attached the affidavit of Jeanne Williamson, a licensed engineer employed by CE in further support of this averment. CE further maintains that the present action was commenced on May 14, 1993. Based upon the foregoing, CE argues that service was effectuated more than seven years after the "absolute finite barrier" date of November 6, 1985, which therefore bars the present action from being instituted against them.
The plaintiff counters that the present action falls within § 52-584b, the exception to the seven year period of limitations as set forth in § 52-584a. According to the plaintiff, the injury in the present action occurred on June 1, 1992, when the CT Page 11004 treatment plant was basically rendered inoperative. The plaintiff further states that, taking CE's averment as true that a certificate of occupancy was issued for the treatment plant on November 6, 1985, seven years from substantial completion is November 6, 1992. Therefore, the plaintiff argues that since it is entitled to one additional year from the date of the injury to its property within which to file suit, and since the injury occurred on June 1, 1992 and service was effectuated on May 13, 1993, the present action is not time barred by the operation of § 52-584a. Once again, the plaintiff has attached the affidavit of Paul Marr, the President of the Willow Springs Condominium Association, to its memorandum in opposition.
Paul Marr states, in part, that:
 The defendant, Consulting Engineers, Inc. was responsible for the design of the waste water treatment facility at the Willow Springs Condominiums.
 Prior to June of 1992, the waste water treatment facility had been in continuous operation since the completion and occupancy of the first condominium units sometime in late 1985 or early 1986.
 On or about June 1, 1992, I was informed, as President of the Unit Owner's Association, that the waste water treatment facility operator had abandoned the facility without notice.
 Upon further inspection and with the input and evaluations of state and local agencies, as well as outside consultants, it was determined that the waste water treatment facility and its component systems had become almost completely inoperable and in need of substantial repair on or about June 1, 1992 due, in part, to design and construction inadequacies.
(Affidavit of Paul Marr dated May 27, 1994, paragraphs 5-10.).
CE refutes the plaintiff's position in its reply memorandum in further support of its motion for summary judgment. CE argues, inter alia, that in order for the plaintiff to avail itself of the exception to the seven year limitations provision set forth in § 52-584b, the injury must have occurred, as opposed to when Paul Marr discovered the injury, during the seventh year following substantial completion which, according CT Page 11005 to CE, was between November 6, 1991 through November 6, 1992. Therefore, CE's position is that if the injury was discovered in June, 1992, the injury itself had to have occurred much earlier and by failing to bring this action until May 13, 1993, the plaintiff cannot avail itself of the period of repose and is accordingly barred by the operation of 52-584.
Similar to defendants Nahom and LaCroce, CE has alluded, in part, to deposition testimony as contained in its reply memorandum in support of this position. Additionally, CE has also attached nine separate exhibits (two of which are excerpts taken from other depositions) to its reply memorandum that were neither certified nor sworn to in the form of a supporting affidavit. The deposition testimony, along with the supporting exhibits, are not admissible as evidence in violation of the requirements of Practice Book § 380, and therefore should not be considered by the court. See Oberdick v. Allendale MutualInsurance, supra, 9 Conn. L. Rptr. 608.
A genuine issue of material facts exists with regard to whether an injury to the plaintiff's property occurred during the seventh year after substantial completion of the treatment plant. Returning to the affidavit of Jeanne Williamson filed in support of CE's motion, a certificate of occupancy was issued for the treatment plant on November 6, 1985, a copy of which is appended to Williamson's affidavit. (See affidavit of Jeanne Williamson dated March 15, 1994, para. 4; Exhibit A). Certificate of occupancies were also issued for seven residential buildings at the complex. (See affidavit of Jeanne Williamson dated March 15, 1994, para. 5). The earliest issued certificate of occupancy was dated November 11, 1985. (See Exhibit C attached to the affidavit of Jeanne Williamson). According to Williamson, "[b]y late February 1986, the condominium site was 21 percent occupied. All the condominium units at Willow Springs Condominiums were served by the waste water treatment plant." (See affidavit of Jeanne Williamson dated March 15, 1994, para. 5.). Paul Marr stated that it was determined on June 1, 1992, that the waste water treatment facility was in need of substantial repair due, at least in part, to "design and construction inadequacies." (See affidavit of Paul Marr dated May 27, 1994, para. 10). Viewed in the light most favorable to the movant, an improvement to real property shall be considered substantially complete pursuant to § 52-584c when it is first available for use after having been completed in accordance with the contract or agreement covering the improvement, which, in CT Page 11006 this case occurred on November 11, 1985, the date of the earliest issued certificate of occupancy. Add to this the seven year limitations period as contained in § 52-584a and the date becomes November 11, 1992. If it was determined on June 1, 1992, that the wastewater treatment facility was wanting due to design inadequacies, the date upon which the injury could have occurred could have been on various days between January 1, 1992 and June 1, 1992, which would constitute an injury to plaintiff's property occurring during the seventh year after substantial completion of the treatment plant. Since the plaintiff filed suit within one year of November 11, 1992, and since CE has not provided the court with any evidence which could demonstrate a limitations date earlier than November 11, 1992, which might, in effect, deprive the plaintiff of the "seventh year" exception to § 52-584a, a question of material fact remains and CE's motion is accordingly denied.
In the alternative, a genuine issue of material fact exists as to when CE's design of the treatment plant became so defective as to constitute negligence on behalf of CE, thus providing a definitive date upon which the limitations period could be measured against. In count eighteen, the plaintiff alleges, in part, that "C E owed a duty of care to the futureusers of such plant" and that "C E was negligent and breached its duty of care in that it: (a) failed to prepare a design which adequately met the sewerage output of the condominium. . . ." (Emphasis added.) (Plaintiff's second amended complaint dated February 25, 1994, para's. 8, 10). To reiterate, the affidavit of Jeanne Williamson states, in part, that "[b]y late February 1986, the condominium site was 21 percent occupied." (See affidavit of Jeanne Williamson dated March 15, 1994, paragraph 5.). That the treatment plant may well have been properly designed and constructed to withstand the amount of waste which would accompany a complex enjoying 21 percent occupancy. Nevertheless, the treatment plant may have been improperly designed to withstand the amount of waste associated with a complex enjoying something more than 21 percent occupancy. At what point and, correlatively, at what date the alleged defective design may have blossomed into actionable negligence is a question of fact that should be reserved for the trier of fact.
/s/ Dranginis, J. Dranginis CT Page 11007
[EDITORS' NOTE: THE CASE THAT PREVIOUSLY APPEARED ON THIS PAGE HAS BEEN MOVED TO CONN. SUP. PUBLISHED OPINIONS.]
CT Page 11007-V