[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AS TO THE COMBINED MOTIONS FOR SUMMARY JUDGMENTIN THE RESPECTIVE MATTERS OF KOKOFF FEED, INC. v. AGWAY, INC. BFS CORPORATION AND BFS CORPORATION v. ARCHER DANIEL MIDLAND CO.
Before the court is defendant BFS Corporation's ("BFS") motion for summary judgement filed with the court on July 25, 1994 against the plaintiff, Kofkoff Feed, Inc. ("Kofkoff Feed"). Also before the court is third party defendant, Archer Daniel Midland Corporation's ("ADM"), motion for summary judgement against BFS's cross claim. ADM's motion was filed on May 27, 1994.
The underlying action began on October 1, 1992 when Kofkoff Feed filed a three count amended complaint against BFS and co-defendant Agway, Inc. ("Agway").
According to the complaint, Kofkoff Feed is a Connecticut Corporation organized to manufacture and supply chicken feed. Kofkoff Feed's main and primary customer is Kofkoff Egg Farms Limited Partnership ("Kofkoff Egg").
In February of 1988, Kofkoff Feed allegedly entered into an agreement with Agway in which Agway agreed to provide nutritional services and quality control advice to Kofkoff Feed. The nutritional services provided by Agway included the formulation and testing of Kofkoff Feed's chicken feed mix which ultimately was sold to Kofkoff Egg. Agway's consulting and nutritional services allegedly continued through March of 1989.
During this same period from February of 1988 until March of 1989, BFS supplied a substance known as lecithin, a fat substitute, to Kofkoff Feed. The lecithin sold by BFS to CT Page 144 Kofkoff Feed was eventually incorporated into the chicken feed mix supervised by Agway.
On or about February 28, 1992, Kofkoff Egg sued Kofkoff Feed seeking damages for Kofkoff Feed's alleged breach of express and implied warranties concerning its chicken feed. In that suit, Kofkoff Egg maintains that Kofkoff Feed's lecithin-mixed chicken feed caused an increase in the mortality rate of its chickens, a decrease in the production and quality of its eggs, poor feathering, and an increase in the amount of wet manure produced by the birds.[1]
In the complaint now before the court, Kofkoff Feed seeks indemnification from BFS and co-defendant Agway for any damage or liability which might be imposed on KofKoff Feed as a result of the suit brought by its main purchaser, Kofkoff Egg.
Counts one and two of the complaint are indemnification counts for breach of contract and negligence against Agway not directly relevant to the pending summary judgement motion of BFS.
Count three alleges that BFS breached its implied warranty that lecithin was reasonably fit and suitable for its particular purpose as a fat substitute. Count three further alleges that Kofkoff Feed reasonably relied on the expertise of BFS as to the use of lecithin and that any damage incurred by Kofkoff Feed as a result of its sale of the lecithin mixed feed to Kofkoff Egg is the responsibility of BFS.
On February 25, 1994, BFS filed a motion for summary judgement claiming that there are no material facts in dispute and that BFS is entitled to summary judgement as a matter of law. In support of its motion, BFS has filed a memorandum of law, affidavits, and selected answers from Kofkoff Feed in response to BFS's interrogatories.
Kofkoff Feed opposes BFS's motion and claims that there are issues of material fact in dispute. In opposition to BFS's motion, Kofkoff Feed has also filed a timely memorandum of law with supporting affidavits and answers to selected interrogatories along with technical data and specification sheets regarding lecithin.
"Pursuant to Practice Book § 384, summary judgement shall CT Page 145 be rendered forthwith if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law. Although the party seeking summary judgement has the burden of showing the nonexistence of a material fact . . . a party opposing summary judgement must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Scinto v. Stamm,224 Conn. 524, 530, 620 A.2d 99 (1993).
"[Summary judgement is] ill adapted to cases of a complex nature or to those involving important public issues, which often need the full exploration of trial." United Oil Co. v.Urban Development Com'n, 158 Conn. 364, 375, 260 A.2d 596, 603
(1969). "While we continue to adhere to the general principle that summary judgement is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent, and subjective feelings and reactions . . . it remains, nevertheless, incumbent upon the party opposing summary judgement to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact exists." Connell v.Colwell, 214 Conn. 242, 251, 571 A.2d 116 (1990). "[Q]uestion[s] of credibility between the parties . . . raises an issue of fact which the trial court cannot resolve on a motion for summary judgement." Suarez v. Dickmont Plastics,229 Conn. 99, 107, 639 A.2d 507 (1994).
Once the moving party has presented evidence in support of the motion for summary judgement, the opposing party must present evidence that demonstrates the existence of some disputed factual issue . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under practice book § 380. . . . To oppose a motion for summary judgement successfully, the nonmovant must recite specific facts in accordance with Practice Book §§ 380 and 381, which contradict those stated in the movant's affidavits and documents." State v. Goggin, 208 Conn. 606, 616-617,546 A.2d 250 (1988).
"In deciding a motion for summary judgement, the trial CT Page 146 court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts." Suarezv. Dickmont Plastics, Corp. , supra, 229 Conn. 105-06.
"In ruling on a motion for summary judgement, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988). "The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." State v. Gogin, supra,208 Conn. 616.
"A `genuine issue' has been variously described as a `triable,' `substantial' or `real' issue of fact . . . and has been defined as one which can be maintained by substantial evidence. Hence, the `genuine issue' aspect of summary judgement procedure requires the parties to bring forward before trial evidentiary facts, or substantial evidence outside the pleadings, from which the material facts alleged in the pleadings can warrantably be inferred." United Oil Co.v. Redevelopment Commission, 158 Conn. 364, 378-79,260 A.2d 596 (1969).
"A `material fact' is simply a fact which will make a difference in the result of the case . . . and a summary disposition should be rendered in the limited instances where the evidence is such that no room for disbelief could exist in the minds of the jury and in circumstances which would require a directed verdict for the moving party." Yanow v. TealIndustries Inc., 178 Conn. 262, 268-69, 422 A.2d 34 (1979).
"`Issues of fact' encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." United Oil Co. v.Redevelopment Corp. , supra, 158 Conn. 379.
1. Liability of a supplier of a component part.
In support of its motion for summary judgement, BFS states that as a matter of law a seller of a component part, not alleged to be defective by itself, can not be held liable for any defects in the final product once the non-defective CT Page 147 component part is incorporated into the final or finished product.
BFS cites many cases from many courts and jurisdictions which so hold, but each and every case that BFS cites are cases regarding causes of action under product liability statutes and not cases concerning the alleged breach of a particular purpose implied warranty under the Uniform Commercial Code ("UCC"). In one of the cases cited in BFS's memorandum of law in support of its motion, Nowak v. E.I.Dupont De Nemours Co., Inc., 827 F. Sup. 1334, 1337
(1993), the court specifically found that the company had properly disclaimed any implied or express warranties.
Count three of Kofkoff Feed's complaint states that "BFS impliedly warranted pursuant to Connecticut General Statutes § 42a-2-315 that [lecithin] was fit and suitable for its particular purpose and use as a fat substitute in chicken feed." This count sounds in breach of warranty, not product liability.
BFS has not cited, nor has the court found, any cases regarding the UCC which hold that the implied warranty for a particular purpose is negated once the component part is incorporated into a final good or product. Thus, BFS has failed to demonstrate that it is entitled to summary judgement as a matter of law.
2. Reliance.
General Statutes § 42a-2-315 states that, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgement to select or furnish suitable goods, there is unless excluded or modified under section 42a-2-316 an implied warranty that the goods shall be fit for such purpose."
The implied warranty for a particular purpose "requires that the seller have reason to know of a buyer's particular purpose and of the buyer's reliance on the seller's skill and judgement, as well as actual reliance in fact by the buyer."Schenck v. Pelkey, 176 Conn. 245, 405 A.2d 665 (1978). "The mental state of the seller plays an essential part in the implication of a warranty of fitness for a particular purpose, CT Page 148 both in terms of the seller's general skill and knowledge and of his knowledge of the particular needs of the buyer and of the fact that the buyer is relying on the seller's skill and judgement." Richard A. Anderson, 3 Uniform Commercial Code § 2-315:55 (1983).
BFS claims that it is entitled to summary judgement because "there is no doubt" that Kofkoff Feed relied not on BFS, the seller of lecithin, but on Agway, in determining whether or not lecithin was a suitable fat substitute in chicken feed. In support of this proposition, BFS points to Kofkoff Feed's response to certain interrogatories in which Kofkoff Feed states that Agway provided the formulas and tested feeds in which lecithin was mixed (BFS exhibit A), implemented and supervised Kofkoff Feed's quality control program and tested the finished feed (BFS exhibit B), and tested all the feed ingredients that were not directly supplied by Agway. (BFS exhibit D). Further, Kofkoff Feed admits that Agway advised Kofkoff Feed to use lecithin. (BFS exhibit E). Kofkoff Feed, however, disputes the fact that it relied on Agway, and claims that it relied on BFS's advice that lecithin was fit to be used as a fat substitute. In a supporting affidavit, Robert Fortin, vice-president of Kofkoff Feeds, states that he received an unsolicited call from a Mr. Kenneth Mushe of BFS. According to the affidavit, Fortin states that Mushe told him that the previous owner of Kofkoff Feed had used lecithin as a suitable and complete fat substitute and that it would save Kofkoff Feed money. (Kofkoff Exhibit A).
In the affidavit of Dr. Robert Stock of Agway in opposition to BFS' motion, Dr. Stock avers that Agway had never used lecithin in any feed mix before, and that a person from BFS had called Stock directly to state that lecithin was a "good feed ingredient suitable for use as a complete fat substitute." (Kofkoff exhibit D). In the same affidavit, Stock admits that lecithin was tested by Agway to determine if it conformed to the specification sheets provided to Kofkoff Feed by BFS, but it did no further testing as to suitability of lecithin as a fat substitute based on BFS's alleged representations that it was suitable.
Because the buyer's and seller's mental state and credibility are so crucial in determining the nature and extent of reliance under 42a-2-315, a motion for summary CT Page 149 judgement is ill suited in this case. Furthermore, Kofkoff Feed has produced enough conflicting evidence in the form of affidavits to meet its obligation to show that a material issue of fact exists as to Kofkoff Feed's reliance on either Agway or BFS in deciding to use lecithin in its chicken feed.
3. Testing.
An implied warranty that a good is fit for a particular purpose can be excluded with regard to defects that a buyer ought to have discovered "when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired. . ." General Statutes § 421-2-316(3).
Based on this statute, BFS states that because Kofkoff Feed admits in its answer to interrogatories that Agway tested the lecithin, that any implied warranty of particular purpose is excluded. Based on all of the affidavits and documents presented by both sides, however, there is an issue of material fact as to why and for what purpose Agway tested the lecithin. Dr. Stock states in his affidavit in opposition to the motion for summary judgement that Agway tested only to verify that the lecithin matched the technical specifications provided to KofKoff Feed by BFS. However, in its responses to BFS's interrogatories, Kofkoff Feed states that Agway provided nutritional services and tested the feed for quality control and nutritional purposes. Therefore, the court finds that a genuine issue of material fact exists as to the purpose and scope of Agway's alleged services and testing of lecithin.
Viewing the evidence in a light most favorable to the non-moving party, BFS is not entitled to a motion for summary judgement as a matter of law. The court further finds that there are material facts in dispute as to Kofkoff Feed's reliance and the nature and scope of testing done on the lecithin and chicken feed by Agway.
On May 27, 1994, BFS filed a one count complaint against the Archer Daniel Midland Corporation ("ADM") as a third party defendant. According to the complaint, ADM allegedly manufactured, sold, and distributed the lecithin to BFS that was eventually sold to Kofkoff Feed. BFS thus claims that if BFS is liable to Kofkoff Feed for breach of warranties, then ADM is liable to BFS for damages as a result of its sale of lecithin to BFS. Paragraph 8 of BFS's third party complaint CT Page 150 against ADM specifically states that BFS's indemnification action is brought pursuant to General Statutes § 52-572m, Connecticut's product liability act.
On September 20, 1994, ADM moved for summary judgement on the ground that BFS's amended third party complaint seeks monies for commercial losses between commercial parties. ADM claims that such a suit is barred under the Connecticut's product liability act.
BFS opposes ADM's motion for summary judgement on the basis that its third party complaint does not seek indemnification for commercial loss but for property damage that it might be held liable for if Kofkoff Egg succeeds in its suit against Kofkoff Feed.
General Statutes § 52-572m(d) defines "harm" as "damages to property, including the product itself, and personal injuries including wrongful death. As between commercial parties, `harm' does not include commercial loss."
General Statutes § 52-572n(c) describes permissible product liability claims and states in part that "[a]s between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code."
While the statute never defines a commercial loss, one court has held that, "commercial loss equals economic injury whether `incidental or consequential, including propertydamages incurred by persons regularly engaged in businessactivities'." (Emphasis added.) Davis v. Acme Pest ControlInc., 11 CONN. L. RPTR. 26 (1994) (Flynn, J.) quotingProducto Machine Co. v. Ajax Manufacturing Corp. , 3 CSCR 66
(1987) (Burns, J).
In Smith v. Yankee Motor Inn, 9 CSCR 880 (1994) (Leuba, J.), the plaintiff sued Yankee Motor Inn for damages and personal injuries suffered when a paper towel dispenser fell off a restroom wall and hit plaintiff on the knee. As a result of that suit, the defendant, Yankee Motor Inn, filed a third party product liability complaint against the designer and manufacturer of the towel dispenser seeking CT Page 151 "indemnification for any and all sums it pays to the plaintiff." Id. The court, however, granted the third party defendant's motion to strike on the ground that Yankee Motor Inn was seeking "loss of profits or consequential economic loss as opposed to property damages and personal injuries" which were barred under Connecticut's product liability statute.
The facts of the present case do not differ substantially from that of Yankee Motor Inn. BFS seeks indemnification from ADM for any loss or liability it may incur as a result of the suit brought against it by Kofkoff Feed. Since all of the parties involved are commercial parties, such a suit is barred under Connecticut's product liability act because BFS is merely seeking reimbursement for economic losses — monies that it might have to pay Kofkoff Feed if BFS is found to have breached any implied warranties under the UCC.
For the above stated reasons BFS's motion for summary judgement (#177) against Kofkoff Feed is denied.
ADM's motion for summary judgement (#184) against BFS's third party complaint, however, is granted.