[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action brought by Continental Casualty Co. (Continental) an insurance company, against the defendant, a manufacturer of dental office equipment, seeking reimbursement for damages it paid to insured parties pursuant to the terms of several property damage insurance policies. Before the court is the defendant's motion for summary judgment as to Count One.
Count one sets up a products liability claim brought pursuant to the Connecticut Products Liability Act (PLA), General Statutes § 52-572 et seq., against the defendant in this case, Dentsply International, Inc. (Dentsply) and contains the following allegations. During a weekend in 1993, a dental suction unit manufactured by Dentsply malfunctioned and caused flooding in the Westside Medical Center in Waterbury. As a result of this CT Page 1344 flooding, office space occupied by the owner of the unit, Dr. William Zanger, and by the Westside Medical Group, P.C. (Westside), suffered extensive water damage. As a further result of this flooding, the entire Westside Medical Center was closed pending an inspection of its damaged electrical system.
The plaintiff alleges it provided property damage insurance coverage to both Zanger and Westside. Pursuant to the terms of these policies, the plaintiff paid claims to Zanger and Westside in the amounts of $134,735.28 and $9,009.01 respectively. The plaintiff alleges that it is subrogated to all rights of its insured under the terms of these policies and seeks reimbursement from the defendant for these payments.
The standard for considering a motion for summary judgment is well established. Pursuant to Practice Book § 384, summary judgment "shall be rendered forthwith if the pleadings, affidavits and other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all the material facts which entitle him to judgment as a matter of law. Suarez v. Dickmont Plastics Corp.,229 Conn. 99, 105, 639 A.2d 507 (1994).
The defendant maintains that it is entitled to summary judgment as to count one because the plaintiff is seeking to recover commercial losses in an action brought under the PLA. The defendant has not submitted affidavits or other proof to meet its initial burden. Instead, it bases its motion on the pleadings. "The proper way to have tested the legal sufficiency of the complaint would have been by demurrer [motion to strike] before the pleadings were closed or, after an answer had been filed, by a motion for summary judgment. . . ." Boucher Agency, Inc. v.Zimmer, 160 Conn. 404, 409, 279 A.2d 540 (1971). "Both the motion to strike and motion for summary judgment test the legal sufficiency of a cause of action . . ." Camp v. Chase,39 Conn. Sup. 264, 267 n. 1, 476 A.2d 1087 (Super.Ct. 1983), citingBoucher. "Summary judgment as a method to test the legal sufficiency of a complaint is available where the standard applicable to all cases for summary judgment are met." Hoey v.Textron, Inc., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 270203 (March 17, 1994, Rodriguez, J.,9 CSCR 423). Thus this court may here consider the legal sufficiency of the plaintiff's claim, but must do so only upon CT Page 1345 the allegations of the first count.
Under the Connecticut Products Liability Act (PLA), General Statutes § 52-572m et seq., individuals injured by defective products may recover for "harm", General Statutes § 52-572n(a), which is defined as including "damage to property, including the product itself and personal injuries including wrongful death." General Statutes § 52-572m(d). The definition of harm itself, however, states that "[a]s between commercial parties, `harm' does not include commercial loss." Id. Moreover, a different and discrete subsection of the statute describes permissible product liability claims and provides that:
 As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code. General Statutes § 52-572n(c).
The defendant puts forth two arguments in support of its motion for summary judgment. Each of these arguments characterize the present action as a suit seeking damages for commercial losses. The defendant's first argument is that a subrogation claim for property damage is itself a commercial loss under the PLA. Secondly, the defendant contends that the underlying property damage, which is the subject of the subrogation claim, is itself such a commercial loss.
In opposition, the plaintiff counters that there is no suggestion in the plain language of the PLA, or its legislative history, that the Legislature intended to bar subrogation claims for property damage. The plaintiff further contends that under the plain wording of the Act that "commercial loss" does not include any and all property damage suffered by a "commercial" party.
The legal issues raised by the defendant's motion for summary judgment, may be separately addressed.
1. Does the PLA bar all subrogation claims?
It is axiomatic that an insurer may maintain a subrogation action to recover losses paid to an insured. "The insurer's right of subrogation against third persons causing the loss paid by the CT Page 1346 insurer to the insured does not rest upon any relationship of contract or privity of contract or privity between the insurer and such third persons, but arises out of the contract of insurance and is derived from the insured alone. . . . The principle has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the right of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the placeof the insured and succeeds to whatever rights he may have in thematter." (Emphasis added.) Orselet v. DeMatteo, 206 Conn. 542,546-47, 539 A.2d 95 (1988).
The defendant's first argument is that all subrogation claims for property damages fall within the "commercial loss" exception to the PLA. In support of this argument, the defendant cites to six cases none of which involve the principle of subrogation. Each of these cases, instead, involve either cross-claims, or claims for contribution or indemnity rather than a subrogation action. See, Smith v. Yankee Motor Inn Inc., Superior Court, judicial district of New London at New London, Docket No. 52 35 60 (July 22, 1994, Leuba, J., 9 CSCR 880); Davis v. Acme PestControl, Inc., supra; Pesce v. Overhead Door Corp., United States District Court, District of Connecticut, Docket No. H 91-435 (TEC) (February 6, 1992); BRT v. New England Masonry Co., supra;McMellon v. McCurdy, Superior Court, judicial district of Middlesex at Middletown, Docket No. 55631 (April 3, 1991, Higgins, J.); Euclid Chemical v. Shell Oil Co., Superior Court, judicial district of Hartford-New Britain, at Hartford, Docket No. 350991 (October 18, 1989, Freed, J., 4 CSCR 768). In contrast, the present case involves a first-party action wherein the plaintiff seeks to enforce legal rights that it succeeded to by virtue of subrogation. Since subrogation stands on a distinct legal footing from claims for contribution or indemnity, the defendant's reliance upon these decisions is misplaced.
The legislature has chosen to specifically bar subrogation claims in other contexts. For example, General Statutes §4-160b specifically bars subrogation claims in actions against the state. In contrast, the plain language of the PLA evidences no such intent. "The intent of the legislature is to be found in the language of the statute, if that language is plain and unambiguous. Kilduff v. Adams, Inc., 219 Conn. 314, 336,593 A.2d 478 (1991). "[W]here the wording [of a statute] is plain, courts will not speculate as to any supposed intention because the question is not what the legislature actually intended, but what CT Page 1347 intention it expressed by the words that it used." (Internal quotation marks omitted.) Kilduff v. Adams, Inc., supra,219 Conn. 336. Had the legislature intended to remove subrogation actions from the scope of the PLA, it surely could have expressly done so. It did not.
2. Do the underlying property damages constitute a "commercialloss"
The defendant's second argument requires this court to consider the definition of commercial loss. The defendant contends that the underlying property damage, as alleged in the complaint, is itself a commercial loss which may not be recovered in an action brought under the PLA.
Two lines of Superior Court cases regarding the scope of the commercial loss exception to the PLA have developed.
One line of cases finds it genesis in the decision of the Superior Court in American Manufacturers Mutual Ins. Co. v.Harrington Hoists, Inc., Superior Court, judicial district of New Haven, Docket No. 262369 (June 13, 1989, Berdon, J., 4 CSCR 564). In American Manufacturers, the defendant Harrington sold a defective hoist to a plaintiff, Schultz, which broke causing damage to an electric motor and to the work premises. Another plaintiff, American Manufacturers Mutual Ins. Co. ("AMMI") paid Schultz for the damage caused by the hoist less a deductible portion under its insurance policy. Id. Schultz then sued Harrington for its deductible and AMMI sued Harrington under the subrogation terms of the policy. Id. The court began its analysis by stating that since the legislature modified "loss" by the term "commercial," it showed an intent to limit the type of loss recoverable under the PLA. Id. Because the legislature did not define the term "commercial loss," the court looked to the "common understanding" of the term as expressed in a dictionary definition of commercial and concluded:
 It is clear therefore that a commercial loss within the meaning of the PLA has reference to loss of profits or consequential economic losses as opposed to property damage and personal injuries.
Id. The court also commented that limiting the definition of commercial loss to consequential economic losses, but not property damage and personal injuries, would be entirely CT Page 1348 consistent with the development of product liability law. Id. Specifically, the court noted that case law on strict liability and interpretations of the Uniform Product Liability Act, which the PLA was modeled after, support its limited definition of commercial loss. Id.
The Harrington definition of commercial loss has been cited with approval in subsequent Superior Court decisions. See, Cityof Danbury v. Topside Sealers, Inc., Superior Court, judicial district of Danbury, Docket No. 309268 (December 30, 1992, Moraghan, J.); G.R. Cummings v. Beazer East, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 32 84 72 (July 7, 1992, Zoarski, J., 7 CSCR 931); BRT Corporation v.New England Masonry, Co., Superior Court, judicial district of Litchfield, Docket No. 48920 (November 25, 1991, Pickett, J,).
Another line of cases adopt a different definition of commercial loss and trace their origin to the decision of the Superior Court in Producto Machine v. Ajax Magnethermic Corp., Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 236005 (November 10, 1987, Burns, J., 3 CSCR 66). InProducto, the plaintiff brought an action against the defendant for damages allegedly caused by its defective product. The plaintiff's damages included damage to the product itself, damage to its work premises, loss of production and losses and expenses incurred for cleanup. The defendant sought to strike the PLA count on the ground that the alleged damage was commercial loss and recovery under the PLA was barred. The issue before the court was whether the term "commercial loss" included damage to property, other than the product itself. The court in Producto
noted the Proposed Uniform Product Liability Act, S. 666, 100th Cong. 1st Sess. 102(a)(5) (March 6, 1987), for its definition of "commercial loss" as "economic injury, whether direct, incidental or consequential, including property damage and damage to the product itself, incurred by persons regularly engaged in businessactivities consisting of providing goods and services for compensation." Id., 67. (Emphasis added.)
The Producto definition of commercial loss has also been cited with approval by a number of cases. See, Davis v. Acme PestControl, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 39612 (January 25, 1994, Flynn, J.), KofkoffFeed, Inc. v. Agway, Inc., Superior Court, judicial district of New London at New London, Docket No. 522748 (January 6, 1995, Austin, J., 13 Conn. L. Rptr. 247). CT Page 1349
Whether this court adopts the Harrington or Producto
definition of "commercial loss", some of the property damage here complained of may be recoverable "harm" rather than precluded "commercial loss". Section 52-572m(d) simply does not preclude all claims for damages suffered by one who may at times be a commercial party; rather, only claims for "commercial loss" of commercial parties are relegated to the Uniform Commercial Code (U.C.C.).
Here the Continental is making claims, among other things, for water damage to improvements and betterments of the premises, and its contents. These claims are not restricted to damages incurred by the insured as "persons regularly engaged in business activities" or as "a commercial party". In the absence of any more detailed description of the property damage in the complaint, Count One is sufficient as to the motion for summary judgment.
Accordingly, the motion is denied.
McDonald, J.